```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT

------------------------------x
                              :
DOMINION RESOURCES SERVICES,  :
INC., et al.                  :   Civ. No. 3:16CV00544(JCH)
                              :
v.                            :
                              :
ALSTOM POWER, INC.            :   August 18, 2017
                              :
------------------------------x
```

**RULING ON MOTION TO QUASH AND FOR A PROTECTIVE ORDER [Doc. #99]**

Plaintiffs Dominion Resources, Inc., Dominion Energy, Inc., Dominion Generation Corporation, and Dominion Technical Solutions, Inc. (collectively referred to herein as "Dominion") have filed a motion to quash two subpoenas, and for a protective order. [Doc. #99]. Defendant Alstom Power, Inc. (referred to herein as "Alstom") has filed a memorandum in opposition. [Doc. #112]. For the reasons set forth below, the Court **DENIES** Dominion's Motion to Quash, and **GRANTS, in part**, Dominion's Motion for a Protective Order. [Doc. #99].

I.  **LEGAL STANDARD**

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009).

Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... forbidding the disclosure or discovery[.]" Fed. R. Civ. P. 26(c)(1)(A). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984). The burden of showing good cause for the issuance of a protective order falls on the party seeking the order. See Brown v. Astoria Fed. Sav. & Loan Ass'n, 444 F. App'x 504, 505 (2d Cir. 2011). "To establish good cause under Rule 26(c), courts require a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." Jerolimo v. Physicians for Women, P.C., 238 F.R.D. 354, 356 (D. Conn. 2006) (citations and quotation marks omitted).

"Pursuant to Rule 45, any party may serve a subpoena commanding a nonparty 'to attend and testify[.]'" Weinstein v. Univ. of Connecticut, No. 3:11CV1906(WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." S.E.C. v. Sassano, 274 F.R.D. 495, 497 (S.D.N.Y. 2011) (quotation marks and citation omitted).

A court "must quash or modify a subpoena that ... requires disclosure of privileged or other protected matter, if no exception or waiver applies; or ... subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv). "The burden of persuasion in a motion to quash a subpoena is borne by the movant." Travelers Indem. Co. v. Metro. Life Ins. Co., 228 F.R.D. 111, 113 (D. Conn. 2005) (citations omitted); see also Dove v. Atl. Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("Where the discovery is relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause.").

**II. DISCUSSION**

On June 26, 2017, Alstom served a subpoena on non-party Associated Electric & Gas Insurance Services ("AEGIS"), an insurer for Dominion. The subpoena seeks testimony in the form of a Rule 30(b)(6) deposition, and the accompanying notice

identifies eleven topics of testimony upon which Alstom seeks to depose a representative of AEGIS. See Doc. #100-1 at 7-9. The proposed topics of deposition are:

(1) The processes, practices, policies, and/or procedures that were followed by AEGIS at any time from 2005 through 2007 to review, approve, permit and/or implement "Insurer Recovery Waivers" contained in contracts between AEGIS' insured and third parties.
(2) Any changes to the processes, practices, policies, and/or procedures described in Item (1) above that were followed by AEGIS after 2007.
(3) Communications between Dominion and AEGIS at any time prior to November 6, 2007 concerning any request or requirement made or stated by Dominion that AEGIS review, approve, permit, accept and/or implement any "Insurer Recovery Waivers" in favor of Alstom or in connection with the Alliance Agreement.
(4) Communications between Dominion and AEGIS ... at any time from 2005 through 2020 concerning any request or requirement made or stated by Dominion that AEGIS review, approve, permit, accept and/or implement any "Insurer Recovery Waivers" in favor of any party other than Alstom.
(5) AEGIS' interpretation of Section IV(J) (Conditions, Subrogation) of the AEGIS Policy, including AEGIS' position concerning whether Section IV(J) applies to the claims made against Alstom in This Lawsuit.
(6) AEGIS' interpretation of Section II(L)(2) (Definitions, Insured) and Endorsement No. 34 of the AEGIS Policy, including [AEGIS'] position concerning whether Section II(L)(2)'s and Endorsement No. 34's definition of "Insured" applies to Alstom.
(7) Whether there is any contract or other agreement between AEGIS and Dominion other than Section IV(E) (Conditions, Cooperation and Settlements) of the AEGIS Policy which states terms and conditions of any requirement or request that Dominion enforce alleged rights of recovery against Alstom in This Lawsuit for amounts paid by AEGIS in connection with the Salem Harbor Litigation.
(8) Whether the attorneys representing Dominion in This Lawsuit have been paid, are being paid, or will be

>     paid for their services and expenses by [AEGIS], by
>     Dominion, or by another person or business group.
> (9) Whether the attorneys representing Dominion in This
>     Lawsuit are being paid (or will be paid) on a
>     contingency basis or an hourly rate basis.
> (10) The amounts paid by AEGIS to Dominion for attorney
>      fees, litigation costs, expenses, and settlements
>      amounts paid in connection with the Salem Harbor
>      Litigation, and the dates of any such payments.
> (11) The documents contained in the AEGIS Document
>      Production and the information contained in those
>      documents.

Id. Alstom also served a subpoena and a notice of deposition on Chris Howell, an employee in Dominion's risk management group, through Dominion's counsel. See Doc. #100-2. The notice does not indicate the topics upon which Alstom seeks testimony. See id.

Thereafter, Dominum moved to quash the subpoenas, and has requested that the Court enter a protective order "to block these depositions[.]" Doc. #100 at 2. Dominion argues that its motion should be granted because the depositions at issue are "unnecessary, burdensome, disproportionate to the needs of the case, and have a high risk of intruding on privileges that this Court has already found to apply." Id. Alstom opposes Dominion's motion, arguing, inter alia, that the depositions seek relevant, discoverable information. See generally Doc. #112.

**A. Standing**

Although neither party has raised this issue in its briefing, as an initial matter, the Court must consider whether Dominion has standing to move to quash the subpoena directed at

AEGIS.[1] "Ordinarily, a party does not have standing to move to quash a subpoena served on a third party. Rather, only the person or entity to whom a subpoena is directed has standing to file a motion to quash." Jacobs v. Conn. Cmty. Tech. Colleges, 258 F.R.D. 192, 194-95 (D. Conn. 2009) (citations omitted). The exception to this general rule is if a party seeks to enforce a claim of privilege or personal right. See Langford v. Chrysler Motors Corp., 513 F.2d 1121, 1126 (2d Cir. 1975) ("In the absence of a claim of privilege a party usually does not have standing to object to a subpoena directed to a non-party witness." (citation omitted)). "The claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoenas was served." United States ex rel. Ortiz v. Mount Sinai Hosp., 169 F. Supp. 3d 538, 545 (S.D.N.Y. 2016) (quotation marks and citation omitted).

> When a subpoena is directed to a nonparty, any motion to quash or modify the subpoena generally must be brought by the nonparty. In particular, a party to the action does not have standing to assert any rights of the

---

[1] AEGIS has remained silent on the issue of this deposition, despite having been served with the subject subpoena, and despite having previously voiced opposition to discovery aimed at it in this matter. See Doc. #78 (AEGIS' Memorandum of Opposition to Alstom's Cross-Motion to Compel Discovery); Doc. #82 (Transcript of April 12, 2017, Hearing before Chief Judge Janet C. Hall) at 2 (AEGIS' counsel's appearance to address the non-party discovery). AEGIS has an appearance in this matter in the Electronic Court Filing system ("CM/ECF") as an "Interested Party", and the CM/ECF receipts indicate that AEGIS' counsel have received electronic notice of all filings since their appearance.

> nonparty as a basis for a motion to quash or modify a subpoena. If, however, a party claims a personal right or privilege regarding the production or testimony sought by a subpoena directed to a nonparty, the party has standing to move to quash or modify the subpoena.

9 James Wm. Moore et al., Moore's Federal Practice §45.50[3] (3d ed. 2017). Thus, "[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden." Universitas Educ., LLC v. Nova Grp., Inc., No. 11CV1590(LTS), 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013) (collecting cases); see also A & R Body Specialty & Collision Works, Inc. v. Progressive Cas. Ins. Co., No. 3:07CV929(WWE), 2013 WL 6511934, at *2 (D. Conn. Dec. 12, 2013) ("The law is well settled that [defendant], as a party, lacks standing to challenge the nonparty subpoenas on the basis of burden." (citation omitted)).

"The proper standard to be applied in evaluating whether a party has standing to request a protective order on behalf of a third-party is the same as that which is applied in the context of efforts by parties to quash subpoenas directed to non-parties." Heller v. City of New York, No. 06CV2842(NG), 2008 WL 2965474, at *4 (E.D.N.Y. Apr. 11, 2008) (citation omitted), report and recommendation adopted, No. 06CV2842(NG)(CLP), 2008 WL 2966187 (E.D.N.Y. Aug. 1, 2008); see also Malmberg v. United States, No. 5:06CV1042(FJS), 2010 WL 1186573, at *1 (N.D.N.Y. Mar. 24, 2010) ("A party ordinarily lacks standing to challenge

a non-party subpoena with a motion for a protective order or to quash unless the party is seeking to protect a personal privilege or right."); In re Application of FB Foods, Inc., No. M8-85(JFK), 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2, 2005) (same); US Bank Nat. Ass'n v. PHL Variable Ins. Co., No. 12CV6811(CM)(JCF), 2012 WL 5395249, at *2 (S.D.N.Y. Nov. 5, 2012) (rejecting defendant's contention that, notwithstanding its lack of standing to quash a non-party subpoena, it has standing to seek a protective order, stating: "This is not a distinction recognized in this circuit. Moreover, it would be peculiar indeed if a party could circumvent the well-established standing requirements under Rule 45 simply by styling what is effectively a motion to quash as a motion for a protective order.").

The Court finds that Dominion has standing to challenge the AEGIS subpoena only to protect any attorney-client privileged communications, or information protected by the work product doctrine, under the common interest that AEGIS and Dominion share.[2] Dominion does not have standing to challenge the AEGIS subpoena or to move for a protective order on AEGIS' behalf on

---

[2] The Court has previously determined that AEGIS and Dominion share a common interest and that certain communications between AEGIS and Dominion, previously sought by Alstom, are privileged and protected by the common interest doctrine. See Doc. #83, Ruling re: Discovery Disputes, Common Interest Doctrine, at 2-4.

grounds of relevancy, burden, or proportionality. Accordingly, the Court will consider whether the AEGIS subpoena should be quashed only on the ground that the testimony would implicate privileged information. The Court notes that Dominion clearly has standing to challenge the subpoena directed at its employee Chris Howell; thus, the Court will evaluate Dominion's motion as to that subpoena on all grounds that Dominion asserts.

    **B.    AEGIS Subpoena**

As to the subpoena directed at non-party AEGIS, Dominion contends that many of the proposed topics could result in inquiry into information that would be protected by the common interest privilege between AEGIS and Dominion, and specifically argues that proposed topics of deposition 7, 8, 9 and 10 may implicate privileged information. See Doc. #100 at 2, 8-9, 11.[3] Alstom argues that it does not seek any testimony that would constitute "common interest communications," but instead is seeking "information regarding AEGIS' standards, policies, and procedures regarding waivers of claims against third parties like Alstom, AEGIS' interpretation of its own insurance policy terms and conditions; the terms of the payment to the Foley Hoag lawyers to pursue these claims, and documents produced by AEGIS in the litigation related to these matters." Doc. #112 at 19.

---

[3] Dominion does not make any specific argument as to privilege in relation to Topics 1-6 and 11.

It is well-settled that the attorney-client privilege protects communications between counsel and client, but does not protect the underlying information.

> The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney[.] The protection of the privilege extends only to <u>communications</u> and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

<u>Upjohn Co. v. United States</u>, 449 U.S. 383, 395–96 (1981) (citations and quotation marks omitted). The work product doctrine, codified by Rule 26 of the Federal Rules of Civil Procedure, protects "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A); <u>see also</u> <u>Upjohn Co.</u>, 449 U.S. at 400 (stating that Rule 26 "protect[s] against disclosure the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party" (quotation marks and citation omitted)).

> The common interest doctrine
>
> has been described as an extension of the attorney client privilege. It serves to protect the confidentiality of communications passing from one party to the attorney

> for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel. Only those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.

United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (quotation marks and internal citations omitted). See also Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 870 N.E.2d 1105, 1113 (Mass. 2007) (recognizing common interest doctrine in Massachusetts); Hicks v. Commonwealth of Va., 439 S.E.2d 414, 416 (Va. 1994) (recognizing the common interest doctrine in Virginia); Mehta v. Ace Am. Ins. Co., No. 3:10CV1617(RNC), 2013 WL 3105215, at *2 (D. Conn. June 18, 2013) (recognizing the common interest doctrine in Connecticut). See also Doc. #83 (finding common interest doctrine applicable in this case).

The Court finds that a deposition of the AEGIS representative on most noticed topics would present only a minimal risk of intruding on privileged matters. Testimony regarding policies, practices, processes, and procedures is not likely to implicate privileged or protected information, see Topics 1 and 2, nor is testimony regarding the existence of other contracts or agreements, despite Dominion's contention otherwise. See Topic 7; see also Doc. #100 at 8-9. Certainly, testimony regarding non-privileged documents and information previously disclosed during discovery would not result in the

disclosure of privileged or protected information. See Topics 10 and 11.

Dominion does not explicitly argue that testimony regarding Topics 3, 4, 5, or 6 would lead to the revelation of privileged or protected information. Nonetheless, the Court notes that topics 3 and 4 seek testimony regarding "communications between Dominion and AEGIS ... concerning any request or requirement made or stated by Dominion that AEGIS review, permit, accept and/or implement any 'Insurer Recovery Waivers'[.]" Doc. #100-1 at 8; see Topics 3 and 4. As the common interest between AEGIS and Dominion would protect any communications between the two entities seeking or providing legal advice, there is some risk that testimony on these topics could lead to disclosure of privileged information. Further, as to topics 5 and 6, testimony regarding AEGIS' interpretation of its insurance policy, including AEGIS' position on whether said policy applies to claims made against Alstom -- by Dominion -- in the instant lawsuit could potentially involve privileged communications between AEGIS and Dominion. See Topics 5 and 6; see also Doc. #111 (Ruling on Motion to Quash and for Protective Order) at 14-15.

Dominion does argue that inquiry into topics 8 and 9 would risk eliciting testimony regarding privileged communications. Topics 8 and 9 concern AEGIS' knowledge of the terms of

retention of Dominion's attorneys. Topic 8 requests information about who is paying for Dominion's counsels' services in this matter, and specifically whether those services and expenses are being funded by AEGIS. See Doc. #100-1 at 8. Topic 9 requests information as to whether Dominion's counsel are being paid on a contingency or hourly rate basis. See id. Dominion contends that "there is a substantial danger that Alstom will attempt to use these areas of inquiry to pry into communications between Dominion and AEGIS, which are privileged." Doc. #100 at 9 (citations omitted). Alstom argues that such information is not privileged, and "may be used as impeachment evidence at trial." Doc. #112 at 18.

"[A]bsent special circumstances, client identity and fee information are not privileged." In re Two Grand Jury Subpoenae Duces Tecum Dated Aug. 21, 1985, 793 F.2d 69, 71-72 (2d Cir. 1986) (quotation marks and citation omitted); see also Vingelli v. U.S., Drug Enf't Agency, 992 F.2d 449, 452 (2d Cir. 1993).[4]

---

[4] The Connecticut Supreme Court has "not decided whether a client's identity and fee payment are protected by attorney-client privilege." Hayes Family Ltd. P'ship v. Sherwood, No. CV084035887, 2008 WL 2802400, at *1 (Conn. Super. Ct. June 25, 2008). Connecticut courts addressing this issue apply Second Circuit law and federal law. See, e.g., Harris v. Kimmel & Silverman, PC, No. HHDCV156064617S, 2016 WL 7742928, at *6 (Conn. Super. Ct. Dec. 5, 2016) (citing Second Circuit law on this issue); Pryor v. Pryor, No. FA084026674S, 2010 WL 654753, at *2 (Conn. Super. Ct. Jan. 22, 2010) (same). Massachusetts courts are in accord with the Second Circuit's position on this issue. See Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 870 N.E.2d 1105, 1114 (Mass. 2007) ("It is well recognized that

"Special circumstances" exist where disclosure of client identity or fee arrangements "would amount to the prejudicial disclosure of a confidential communication." In re Two Grand Jury Subpoenae Duces Tecum, 793 F.2d at 71 (quotation marks and citation omitted). Thus, as to topic 9, the Court finds that Alstom may ask AEGIS whether Dominion's attorneys are being paid on an hourly rate basis or on a contingency fee basis, as this information is generally not privileged, and no special circumstances appear to apply. This ruling is strictly limited, however, to the specific question of whether Dominion's attorneys are paid in this lawsuit on an hourly or a contingency fee basis.

The Court's analysis of the claims at issue in this lawsuit and the Court-recognized common interest between AEGIS and Dominion leads it to a different conclusion regarding topic 8. The Court agrees with Dominion that inquiry into this topic presents a substantial danger of intruding on privileged information.[5] Questions regarding the who, what, when, where and why of any retention arrangement between AEGIS and Dominion regarding this lawsuit would go to the very heart of the common

---

the identity of an attorney's client and the source of payment for legal fees are not normally protected by the attorney-client privilege." (quotation marks and citation omitted)).

[5] The Court notes that it has previously questioned the relevance of this information. See Doc. #111 at 19.

interest that AEGIS and Dominion share, and by necessity would implicate privileged information. Thus, the Court concludes that revelation of information regarding this topic would "amount to the prejudicial disclosure of a confidential communication." <u>In re Two Grand Jury Subpoenae Duces Tecum</u>, 793 F.2d at 71 (quotation marks and citation omitted), and therefore special circumstances exist to preclude <u>any</u> questioning on this topic. Alstom's contention that such information is sought for "impeachment evidence" at trial is not a sufficient grounds to potentially invade this privilege. Accordingly, the Court **GRANTS** Dominion's Motion for a Protective Order as to prohibit <u>any</u> questioning on topic 8.

The Court further notes that AEGIS has every right to object to any questions that it believes would reveal privileged or protected information. Moreover, Alstom is on <u>explicit</u> notice that AEGIS enjoys the protection of a privilege in this matter regarding certain communications and information. **The Court is confident that Alstom will not intentionally seek such information, and that Alstom will make every effort to avoid any line of questioning that may unintentionally reveal such information, in light of the above and in light of the Court's prior ruling on this issue.**

Accordingly, the Court declines to quash the AEGIS subpoena based on Dominion's assertion that the deposition at issue would

reveal Dominion's privileged and protected information. The Court **GRANTS, in part,** Dominion's Motion for a Protective Order to prohibit any questioning on topic 8.

    **C.**    **Chris Howell Subpoena**

Next, Dominion seeks to quash a subpoena for a deposition directed at Chris Howell, an employee in Dominion's Risk Management Group. Dominion argues that Alstom "presumably" seeks to depose Mr. Howell "on matters concerning AEGIS." Doc. #100 at 2. Dominion argues that the proposed testimony of Mr. Howell, who has knowledge of the AEGIS relationship, would be either "irrelevant or privileged." Id. at 11. Alstom, in turn, contends that Mr. Howell was identified during a prior deposition "as a fact witness with knowledge of information relevant to the risk allocation of the parties under the Alliance Agreement." Doc. #112 at 13. Alstom argues that Mr. Howell is expected to have relevant, discoverable information that Dominion's corporate representative was unable to provide. Alstom contends that because Mr. Howell has been identified as a fact witness with knowledge about the matters at issue, "Alstom is entitled to discover relevant information from [Mr. Howell] without having to predict what specific information may be disclosed." Id. at 14 n.14.

The Court finds that Dominion has not articulated good cause to quash the Howell subpoena, nor has it established good

cause for the Court to enter a protective order precluding Mr. Howell's testimony. A court "must quash or modify a subpoena" that "requires disclosure of privileged or other protected matter" or "subjects a person to undue burden," Fed. R. Civ. P. 45(3)(A)(iii)-(iv); Dominion has not made such a showing.

"An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." Travelers Indem. Co., 228 F.R.D. at 113. "The mere assertion that a subpoena is burdensome, without evidence to prove the claim, cannot form the basis for an 'undue burden' finding." In re Cty. of Orange, 208 B.R. 117, 121 (Bankr. S.D.N.Y. 1997).

Dominion claims that the proposed topics of deposition directed to AEGIS are largely irrelevant, and that having multiple depositions on these topics would be duplicative and a waste of time and resources. See Doc. #100 at 11. However, Alstom noticed those topics of deposition in connection with the AEGIS subpoena, not in connection with the Howell subpoena. Moreover, in its opposition, Alstom articulates arguably relevant, non-privileged categories of information about which it seeks to question Mr. Howell. Alstom also points to gaps in the testimony of Dominion's prior 30(b)(6) witness, and provides a basis for seeking Mr. Howell's testimony. Dominion has not articulated any burden, let alone an undue burden, that would

result from Mr. Howell's deposition. Accordingly, the Court declines to quash the subpoena directed at Mr. Howell.

Dominion also does not supply the Court with a "particular and specific demonstration of fact" why a protective order should issue as to Mr. Howell's deposition. Jerolimo, 238 F.R.D. at 356. Again, in respect to the AEGIS deposition categories, Dominion argues that the information sought is irrelevant, unnecessary, privileged, and, in at least one instance, "is purely intended to harass Dominion and force it to litigate extraneous issues." Doc. #100 at 10. As noted above, Dominion's argument appears to address the topics of discovery noticed for the AEGIS deposition, and does not specifically address why Mr. Howell's deposition would cause "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Thus, the Court declines to enter a protective order precluding this deposition. See Garneau v. Paquin, No. 3:13CV00899(AVC), 2015 WL 3466833, at *3 (D. Conn. June 1, 2015) (Motion for a protective order denied because "[n]othing in the record suggests that conducting the deposition on March 24, 2015, would have caused a clearly defined, specific, and serious injury to [the subpoenaed witnesses].")[6]

---

[6] Alstom insists that Mr. Howell is a "fact witness," as distinguished from Emil Avram, Dominion's corporate representative. See Doc. #112 at 13, 14 n.14, 16. Alstom would have been required to "describe with reasonable particularity the matters for examination" had Mr. Howell been designated as a

### D. Alternative Means of Discovery

Finally, the Court notes that both parties have proposed that much, if not all, of the information sought by the instant depositions can be addressed by stipulations. See Doc. #100 at 2, 6; Doc. #100-3 at 2-3; Doc. #112 at 112-5 at 1-4. Proceeding by way of stipulations would certainly be a more efficient and cost-saving approach that would lessen any burden on the subjects of the depositions. The Court strongly encourages the parties to meet and confer again in an effort to resolve these issues in whole or in part by way of stipulation.

## III. CONCLUSION

Accordingly, for the reasons set forth above, the Court **DENIES** Dominion's Motion to Quash and **GRANTS, in part,** Dominion's Motion for a Protective Order [Doc. #99]. Alstom shall re-notice said depositions to take place on or before **September 13, 2017.**

---

Rule 30(b)(6) witness. Fed. R. Civ. P. 30(b)(6). The Court reminds the parties that the "testimony provided by a corporate representative at a Rule 30(b)(6) deposition binds the corporation. This is quite unlike a deposition of an employee of the corporation, which is little more than that individual employee's view of the case and is not binding on the corporation." Cipriani v. Dick's Sporting Goods, Inc., No. 3:12CV910(JBA), 2012 WL 5869818, at *2 (D. Conn. Nov. 19, 2012) (quotation marks and citations omitted). Thus, while Alstom seeks to depose Mr. Howell in part on "information which Mr. Avram was unable to provide at his deposition," as a fact witness, his testimony would not be binding on the corporation.

This is not a Recommended Ruling. This is an order regarding discovery which is reviewable pursuant to the "clearly erroneous" statutory standard of review. See 28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the District Judge upon motion timely made.

SO ORDERED at New Haven, Connecticut, this 18th day of August, 2017.

/s/
HON. SARAH A. L. MERRIAM
UNITED STATES MAGISTRATE JUDGE