**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

DOMINION RESOURCES SVC, INC., :
   Plaintiff,     :   CIVIL ACTION NO.
          :   3:16-CV-544
   v.        :
          :
ALSTOM POWER, INC.,    :   AUGUST 6, 2018
   Defendant.    :

**RULING RE: MOTION TO EXCLUDE EXPERT TESTIMONY OF TOMMY MICHAELS (DOC. NO. 117) AND MOTION TO EXCLUDE EXPERT TESTIMONY OF JEFFREY STEMPEL (DOC. NO. 119)**

## I. INTRODUCTION

This case involves a breach of contract dispute between the plaintiffs (collectively "Dominion Resources") and the defendant, Alstom Power, Inc. ("Alstom").  On September 1, 2017, Dominion Resources filed a Motion to Exclude the Testimony of Alstom's Proposed Expert, Tommy Michaels.  See Dominion Resources' Motion to Exclude Expert Testimony of Tommy Michaels ("Dominion Resources' Mot. to Exclude") (Doc. No. 117).  On that same date, Alstom filed a Motion to Exclude the Testimony of Dominion Resources' Proposed Expert, Jeffrey Stempel.  See Alstom's Motion to Exclude Expert Testimony of Jeffrey STempel ("Alstom's Mot. to Exclude") (Doc. No. 119).

For the reasons stated below, Alstom's Motion to Exclude the Expert Testimony of Jeffrey Stempel is **DENIED**.  Dominion Resources' Motion to Exclude the Expert Testimony of Tommy Michaels is **GRANTED IN PART AND DENIED IN PART**.

## II. BACKGROUND

Dominion Resources and Alstom entered into a contract (the "Alliance Agreement") on February 1, 2005.  See Dominion Resources' Local Rule 56(a)(1)

Statement of Facts ("Dominion Resources' L.R.56(a)(1)") (Doc. No. 133) at ¶ 1;

Alstom's Local Rule 56(a)(1) Statement of Facts ("Alstom's L.R.56(a)(1)") (Doc. No.

135) at ¶ 1.  The Alliance Agreement governed services provided by Alstom at

Dominion Resources' power generation facilities, pursuant to purchase orders issued by

Dominion Resources and accepted by Alstom.  See id.  Among other things, the

Alliance Agreement provided that Dominion Resources and Alstom would each

"indemnify, save harmless and . . . defend" the other for certain claims specified in the

Alliance Agreement.  See Alstom's L.R.56(a)(1) at ¶ 5; Dominion Resources' Local Rule

56(a)(2) Statement of Facts ("Dominion Resources' L.R.56(a)(2)") (Doc. No. 138) at ¶ 5;

Dominion Resources' L.R.56(a)(1), Ex. 1 ("Alliance Agreement"), Terms and Conditions,

at 15017–18.  The Alliance Agreement also required Alstom to obtain certain insurance

policies, including "commercial general liability insurance" with coverage and limits

specified in the Alliance Agreement.  See Alstom's L.R.56(a)(1) at ¶ 6; Dominion

Resources' L.R.56(a)(2) at ¶ 6; Alliance Agreement, Terms and Conditions, at 14.  It

also required the parties to each, "to the extent permitted by its insurers, require each of

their respective insurers to waive all rights of recovery against each other."  Alliance

Agreement, Terms and Conditions, at 15020.

Alstom obtained an insurance policy (the "Zurich Policy") from Zurich American

Insurance Company for the period of April 1, 2007, to April 1, 2008.  See Dominion

Resources' L.R.56(a)(1) at ¶ 2; Alstom's Local Rule 56(a)(2) Statement of Facts

("Alstom's L.R.56(a)(2)") (Doc. No. 140) at ¶ 2.  The Zurich Policy had an aggregate

limit of liability of $5 million, and Dominion Resources was named as an additional

insured.  See id.  Alstom also obtained a commercial umbrella insurance policy (the

"Allianz Policy") from Allianz Global Risks U.S. Insurance Company for the same time period with a policy limit of $18 million. See Alstom's L.R.56(a)(1) at ¶ 25; Dominion Resources' L.R.56(a)(2) at ¶ 25. Both the Zurich Policy and the Allianz Policy were "eroding" policies, such that the costs of defense reduce the amount of insurance available under the liability limit.[1] See Alstom's L.R.56(a)(1) at ¶ 13; Dominion Resources' L.R.56(a)(2) at ¶ 13.

Pursuant to a purchase order under the Alliance Agreement, Alstom performed an inspection of a boiler at a Dominion Resources power generation facility in Massachusetts in April 2007. See Dominion Resources' L.R.56(a)(1) at ¶ 6; Alstom's L.R.56(a)91) at ¶ 33. On November 6, 2007, an accident occurred involving the boiler inspected by Alstom, and five individuals were injured as a result, three fatally so. See Dominion Resources' L.R.56(a)(1) at ¶ 7; Alstom's L.R.56(a)(1) at ¶ 36. In May 2009, the decedents' estates and the injured workers filed a lawsuit against Dominion Resources, Alstom, and other defendants in Massachusetts Superior Court. See Dominion Resources' L.R.56(a)(1) at ¶ 8; Alstom's L.R.56(a)(1) at ¶¶ 37–39.

Ultimately, the parties in the Massachusetts state court litigation reached a settlement agreement in 2015. See Dominion Resources' L.R.56(a)(1) at ¶ 13; Alstom's L.R.56(a)(1) at ¶¶ 48. Under the settlement, Dominion Resources paid in excess of $5 million to the plaintiffs of the Massachusetts litigation. See Alstom's L.R.56(a)(1) at ¶ 64; Dominion Resources' L.R.56(a)(2) at ¶ 64. Dominion Resources also claims that

---

[1] Although the parties dispute whether the initial forms for the Zurich Policy contemplated an eroding or non-eroding policy, the parties agree that, as of an Endorsement to the Zurich Policy issued in October 2010, and effective April 1, 2007, the policy was an eroding policy. See Dominion Resources' L.R.56(a)(1) at ¶ 5; Alstom's L.R.56(a)(2) at ¶ 5.

they paid in excess of $9.9 million to defend themselves in the Massachusetts litigation. See Alstom's L.R.56(a)(1) at ¶ 65; Dominion Resources' L.R.56(a)(2) at ¶ 65.

Dominion Resources received $5 million from the Zurich Policy and the Allianz Policy obtained by Alstom. See Alstom's L.R.56(a)(1) at ¶ 71; Dominion Resources' L.R.56(a)(2) at ¶ 71. Dominion Resources had also independently obtained an excess insurance policy (the "AEGIS Policy") from AEGIS. See Dominion Resources' L.R.56(a)(1) at ¶ 14; Alstom's L.R.56(a)(2) at ¶ 14. Dominion Resources received from the AEGIS Policy all of the remaining amount that Dominion Resources paid to defend and settle the Massachusetts litigation that was not paid by the Zurich or Allianz Policies. See Alstom's L.R.56(a)(1) at ¶ 72; Dominion Resources' L.R.56(a)(2) at ¶ 72.

On December 1, 2016, Dominion Resources filed the Amended Complaint, alleging two counts of breach of contract against Alstom. See Amended Complaint ("Am. Compl.") (Doc. No. 45). Count One alleges that Alstom breached the Alliance Agreement by failing to pay the costs of Dominion Resources' defense in the Massachusetts litigation. See id. at ¶¶ 43–47. Count Two alleges that Alstom breached the Alliance Agreement by obtaining eroding insurance policies. See id. at ¶¶ 48–52. Dominion Resources argues that "commercial general liability insurance," as specified in the Alliance Agreement, required a non-eroding policy such that coverage for a defense would not reduce the amount of insurance available under the policy limit. See id. at ¶ 31. Dominion Resources argues, therefore, that it should have received from Alstom's insurance policies both the $9.9 million for the cost of the defense and the $5 million for the cost of the settlement. See id. at ¶ 42. Instead, because the policy was eroding, Dominion Resources received only a total of $5 million toward the defense.

4

See id. at ¶ 41. Alstom argues to the contrary that "commercial general liability insurance" does not require a non-eroding policy and that, therefore, it complied with the Alliance Agreement. See Alstom's Motion for Summary Judgment on Dominion Resources' Breach of Contract Claims ("Alstom's MFSJ") (Doc. No. 131) at 6–18.

On December 15, 2016, Alstom filed its Answer, Defenses, and Counterclaims. See Answer, Defenses, and Counterclaims ("Answer") (Doc. No. 48). In it, Alstom advances three counterclaims. Counterclaims One and Two assert claims for contractual indemnity and indemnity at law, respectively. See id. at ¶¶ 100–105. Counterclaim Three alleges that Dominion Resources breached the Alliance Agreement by failing to require AEGIS to waive all rights of recovery against Alstom and by pursuing claims paid by AEGIS in this litigation. See id. at ¶¶ 106–09.

On October 27, 2017, Alstom and Dominion Resources both cross-moved for summary judgment. See Motion for Summary Judgment by Dominion Resources ("Dominion Resources' MFSJ") (Doc. No. 129); Motion for Summary Judgment Dismissing Plaintiffs' Breach of Contract Claims ("Alstom's MFSJ") (Doc. No. 131); Motion for Summary Judgment Dismissing Plaintiffs' Claims as Barred by Statute of Limitations (Doc. No. 132); Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment (Doc. No. 134). Each seeks to preclude the testimony of the other's expert witness. The court lays out each expert's opinion in more detail below.

## III.  LEGAL STANDARD

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or

other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "The party proffering the proposed expert evidence bears the burden of establishing its admissibility by a preponderance of the evidence." Karavitis v. Makita U.S.A., Inc., 722 Fed. App'x 53, 55 (2d Cir. 2018).

Daubert v. Merrell Dow Pharmaceuticals, Inc. established a two-part inquiry: "whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand and determine a fact in issue." Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 592 (1993). Thus, the court must first determine whether the expert's testimony meets a "standard of evidentiary reliability." Id. at 590. The Supreme Court has articulated four factors courts may look to when assessing the reliability of an expert: (1) "whether a theory or technique . . . can be (and has been) tested"; (2) "whether a theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error of a technique"; and (4) the "general acceptance" of a theory by the "relevant scientific community." Id. at 593–94.

However, these factors "do not constitute a definitive checklist or test." Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 150 (1999) (emphasis in original). Rather, the court's "gatekeeping inquiry must be tied to the facts of a particular case," and "the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of the testimony." Id. (internal quotation marks and citation omitted). The Second Circuit has held that this is particularly true where the testimony does "not depend on

engineering or scientific expertise," but concerns "the customs and practices of the insurance industry." SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC, 467 F.3d 107, 133 (2d Cir. 2006); see also Iacobelli Construction, Inc. v. Cty. of Monroe, 32 F.3d 19, 25 (2d Cir.1994).

Second, the court must determine whether the expert's testimony meets a relevance standard. See Daubert, 509 U.S. at 591. In order to assist the trier of fact, the expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." Id. (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

## IV. DISCUSSION

### A. Alstom's Motion to Exclude Expert Testimony of Jeffrey Stempel

Dominion Resources offers the expert opinion of Jeffrey Stempel, Professor of Law at the William S. Boyd School of Law, University of Nevada Los Angeles. See Expert Report of Jeffrey W. Stempel ("Stempel Report") (Doc. No. 119-2) at ¶ 1. Stempel's expert opinion is summarized as follows:

> When legal, commercial, and risk management actors speak of "commercial general liability insurance"—particularly at the primary level—they are speaking of a CGL policy that includes a duty to defend (or pay defense costs) and that defense expenditures shall not reduce the policy limits.
>
> In other words, the universal understanding and assumption is that a standard commercial general liability policy will defend the litigation or pay the costs of defense in addition to the stated policy limits and that the policy limits are to be available for payment of judgments or settlements and not to be reduced by the amount paid for defense expenditures.

Id. at ¶¶ 23–24.

7

Alstom seeks to exclude Stempel's opinion on four grounds. First, Alstom argues that Stempel lacks the knowledge and expertise to be qualified as an expert because he does not have any practical experience beyond the academic realm, and because he does not have expertise in transactions between large insureds. See Alstom's Memorandum in Support of Motion to Exclude ("Alstom's Mem. in Supp.") (Doc. No. 119-1) at 8–15. Second, Alstom argues that Stempel's opinions "are not helpful because they are not sufficiently connected to the facts of the case." Id. at 15–21. Third, Alstom argues that Stempel's opinions "are not the product of reliable principles or methods because they do not address the insurance market for large commercial insureds with unique risk management issues." Id. at 21–24. Finally, Alstom argues that the risk of confusing the issues, misleading the jury, and wasting time substantially outweighs any probative value. See id. at 24–27.

To the extent that Alstom challenges Stempel's qualifications as an expert, the court is not persuaded. Federal Rule of Evidence 702 permits that an expert may be qualified "by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The Second Circuit has instructed that these words "be read in light of the liberalizing purpose of the Rule." United States v. Brown, 776 F.2d 397, 400 (2d Cir. 1985); see also Engler v. MTD Prod., Inc., No. 13-CV-575 CFH, 2015 WL 900126, at *8 (N.D.N.Y. Mar. 2, 2015) (stating that "expert qualifications are liberally construed").

In considering whether the witness is qualified as an expert, the court must "first ascertain whether the proffered expert has the educational background or training in a relevant field." Cary Oil Co. v. MG Ref. & Mktg., Inc., No. 99 CIV. 1725 (VM), 2003 WL 1878246, at *2 (S.D.N.Y. Apr. 11, 2003). Then, the court must "compar[e] the area in

which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." Karavitis, 722 Fed. App'x at 55 (quoting United States v. Diallo, 40 F.3d 32, 34 (2d Cir. 1994)). The expert's knowledge of the subject matter must be "such that his opinion will likely assist the trier of fact in arriving at the truth." Valentin v. N.Y. City, No. 94 CV 3911(CLP), 1997 WL 33323099, at *14 (E.D.N.Y. Sept.9, 1997).

First, Alstom challenges Stempel's qualifications by arguing that his expertise comes from "having an academic knowledge about the history of the insurance industry and the evolution of standard insurance forms," but that he "lacks any practical, hands-on experience in either the insurance industry or in risk management for any corporation or business group." Alstom's Mem. in Supp. at 10–12. Contrary to Alstom's argument, however, "one may be an expert solely based on one's practical experience notwithstanding a lack of professional education or one's formal education despite a lack of practical experience." Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp., No. 04CIV.7369(LTS)(HBP), 2006 WL 2128785, at *5 (S.D.N.Y. July 28, 2006); see also SLSJ, LLC v. Kleban, 277 F. Supp. 3d 258, 266, 273 (D. Conn. 2017) (finding a professor of corporate law to be qualified based on his academic experience); Cary Oil, 2003 WL 1878246, at *2 ("A formal education in a particular field is sufficient to qualify a witness as an expert."); TC Sys. Inc. v. Town of Colonie, New York, 213 F. Supp. 2d 171, 174–75 (N.D.N.Y. 2002) (finding a witness to be a qualified expert where the witness had "a doctorate in economics and has taught courses in antitrust and regulation as well as urban and regional planning," even though the witness "does not demonstrate any practical experience"); Valentin, 1997 WL 33323099, at *15 (stating

that "formal education may also suffice to qualify a witness as an expert in a particular field, and the lack of extensive practical experience directly on point does not necessarily preclude the expert from testifying").

In this case, the court is satisfied that Stempel is sufficiently qualified to testify in the field of insurance contracts. Stempel is the Doris S. & Theodore B. Lee Professor of Law at the William S. Boyd School of Law, University of Nevada Las Vegas. See Stempel Report at ¶ 1. He has been a full-time law professor since 1986, teaching, inter alia, insurance law and contracts. See id. at ¶ 4. He has also published numerous articles and books on insurance issues and has served as an expert witness or consultant in an array of insurance matters. See id. at ¶¶ 2–3. The court concludes that he has sufficient expertise in insurance contracts that his testimony will assist the trier of fact in determining a matter in issue, specifically the meaning of the term "commercial general liability insurance" in the Alliance Agreement.

Alstom then argues that, even if Stempel is qualified as an expert, his expertise is insufficiently related to the subject matter about which he purports to testify, i.e. "the negotiation of insurance requirements between large commercial organizations, or what it is that commercial actors 'mean' when they refer to particular types of insurance in their contracts." See Alstom's Mem. in Supp. at 13–15. Specifically, Alstom argues that Stempel's expertise is not specific to large commercial insureds, like Alstom and Dominion Resources. See id. Furthermore, it points out that none of Stempel's publications, classes, or former testimony specifically addressed "whether a contract agreement between commercial parties which requires one or both of them to obtain

general liability insurance includes a requirement that the insurance have non-eroding limits." See id. at 13–14.

The Second Circuit has held that "a district court may properly conclude that witnesses are insufficiently qualified . . . because their expertise is too general or too deficient." Stagl v. Delta Air Lines, Inc., 117 F.3d 76, 81 (2d Cir. 1997). However, "[a]n expert's training need not narrowly match the point of dispute in the case." Colon ex rel. Molina v. BIC USA, Inc., 199 F.Supp.2d 53, 73 (S.D.N.Y. 2001); see also Deutsch v. Novartis Pharm. Corp., 768 F.Supp.2d 420, 425 (E.D.N.Y.2011) (stating that, when an expert's background is in a "general field closely related to the subject matter in question, the court will not exclude the testimony solely on the ground that the witness lacks expertise in the specialized areas that are directly pertinent"); Yaccarino v. Motor Coach Indus., Inc., No. 03 CV 4527, 2006 WL 5230033, at *9 (E.D.N.Y. Sept. 29, 2006) (holding that an expert need not be precluded "from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute").

Although Stempel is not specialized in the particular sub-market that Alstom and Dominion occupy and has not published or testified previously on the precise question of whether general liability insurance requires a non-eroding policy, his expertise is not too general but, rather, is sufficiently related to the subject matter. His experience covers "the history, structure, application, and construction of insurance and suretyship," as well as "the operation of insurance, suretyship, industry custom and practice, product design, determination of coverage, treatment of exclusions, claims-handling and policyholder relations." Stempel Report at ¶ 4. The court concludes that this expertise

11

is sufficient to permit him to testify about the common industry understanding of commercial general liability insurance. Alstom's challenges go to the weight, rather than the admissibility, of Stempel's testimony, and it may present its challenges to Stempel's qualifications to the jury through cross-examination. See McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1043 (2d Cir. 1995); Hilaire v. DeWalt Indus. Tool Co., 54 F. Supp. 3d 223, 236 (E.D.N.Y. 2014).

Alstom's remaining three arguments are all variations of the same point. Alstom argues that Stempel's opinion about the universal meaning of "commercial general liability insurance" is based on a standard consumer insurance market and, therefore, is not tailored to the specialized insurance market for large insureds, such as Dominion Resources and Alstom. See Alstom's Mem. in Supp. at 15–27. Based on this argued shortcoming, Alstom claims that Stempel's opinion is not relevant because it fails to fit the facts of the case, is not the product of reliable methods because an analytical gap exists between the methodology and the opinion, and is more prejudicial than probative because the failure to distinguish the specialized market will confuse the issues and mislead the jury. See id.

As stated above, expert testimony must "help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. This standard requires that "the expert's opinion must relate to an issue that is actually in dispute and must provide a valid . . . connection to the pertinent inquiry." Cayuga Indian Nation of New York v. Pataki, 83 F. Supp. 2d 318, 327 (N.D.N.Y. 2000) (quoting Graham v. Playtex Prod., Inc., 993 F. Supp. 127, 130 (N.D.N.Y. 1998)). For instance, courts have found that "[a] proffered expert opinion may fail to meet the fit requirement if it relates to 'facts

or data that have not been adequately established in the case.'" <u>Amorgianos v. Nat'l</u> <u>R.R. Passenger Corp.</u>, 137 F. Supp. 2d 147, 163 (E.D.N.Y. 2001), <u>aff'd</u>, 303 F.3d 256 (2d Cir. 2002).

Additionally, "nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the <u>ipse dixit</u> of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion offered." <u>General Electric Co. v. Joiner</u>, 522 U.S. 136, 146 (1997). Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony." <u>Nimely v. City of</u> <u>New York</u>, 414 F.3d 381, 396–97 (2d Cir. 2005) (citation omitted).

Neither of these rules pertaining to relevance or methodology requires the exclusion of Stempel's testimony in this case, however, because his expert opinion sufficiently fits the facts of the case and is not <u>ipse dixit</u>. Alstom argues that Stempel's opinion is irrelevant and unreliable because it is not narrowly tailored to the specialized insurance market for large insureds. The court disagrees. Stempel does acknowledge in his deposition that consumers are a "different animal" from commercial entities, especially large ones. <u>See</u> Deposition of Jeffrey W. Stempel ("Stempel Depo.") (Doc. No. 119-3) at 101. However, nothing in Stempel's opinion indicates that it is limited to consumers and not applicable to commercial entities. Rather, Stempel's Report expressly includes commercial actors. <u>See, e.g.</u>, Stempel Report at ¶ 33 ("At the primary insurance level of general liability insurance, the duty to defend and the concept of defense expenditures not reducing policy limits is so well established that <u>both</u>

13

individual and commercial entities have come to expect that a primary general liability policy is not a policy in which the policy limits are eaten away by defense expenditures." (emphasis added)).  He bases his opinion in part on the standard form commercial general liability policy from the Insurance Services Office, which is "in wide use by the business world."  See id. at ¶ 34.

Although an expert's opinion may rightly fail to fit the facts of the case where the opinion discusses the meaning of a term in one market while the contract at issue is not within that market, this is not the case here.  Large insureds are one subset of commercial actors and are therefore included within the general insurance market that forms the basis of Stempel's opinion.  Stempel's opinion does not need to be specifically tailored to the exact type of company that Alstom is in order to assist the trier of fact.  By providing an opinion on the customary meaning of "commercial general liability insurance" in the market as a whole, his opinion assist the trier of fact in determining a factual issue that is actually in dispute, even though it may be less helpful than an expert opinion that looked at a narrower subset of the market.  For the same reason, the court also concludes that there is not an analytical gap between the opinion and its basis warranting exclusion.  Alstom may expose perceived limitations in Stempel's opinion, including its lack of focus on the specific market for large insureds, to the jury through cross-examination, but the court declines to exclude Stempel's testimony on this ground.  See Hillaire, 54 F. Supp. 3d at 236.

Additionally, Alstom's argument that Stempel acknowledged that large insureds are more likely to customize their policies to permit eroding policies than small businesses, see Stempel Depo. at 100–01, does not support its position.  Regardless of

this fact, Stempel's opinion fits the facts in this case because Alstom and Dominion Resources did not customize the policy required by the Alliance Agreement. The fact that large companies are more likely to do so supports Stempel's opinion that Alstom and Dominion could have done so, but, in choosing not to, accepted the customary meaning of the term "commercial general liability insurance," as used in the industry. Stempel's opinion assists the jury in understanding that customary meaning in the industry.

Furthermore, to the extent that Alstom argues that Stempel's opinion fails to fit the facts of the case because he did not speak with the parties involved or review testimony concerning the parties' contract negotiations, see Alstom's Mem. in Supp. at 19, Alstom misunderstands Stempel's opinion. Stempel is not offering an opinion on the construction of the particular contract at issue here, nor would such an opinion be admissible, as it would be a legal conclusion. See infra at 21–24. Rather, he offers an opinion as to the customs and practices in the industry regarding the standard meaning of the term "commercial general liability insurance." See Stempel Report at ¶¶ 23–24. It is for the jury, not an expert witness, to determine what the Alliance Agreement required of Alstom, in light of the meaning of the terms and the evidence pertaining to the parties' intent.

Finally, the court does not find that the probative value of Stempel's testimony is substantially outweighed by its prejudicial effect. Although the probative value may be weakened by Stempel's reference to the standard insurance market rather than the market specific to large insureds, the testimony is nonetheless probative of the customary meaning of commercial general liability insurance. Alston may present on

cross-examination the differences between large and small businesses, thereby permitting the jury to evaluate the relevance of Stempel's testimony and lessening the danger that they may be misled.  Any remaining prejudicial effect is not sufficient to outweigh the probative value of the testimony.

Accordingly, Alstom's Motion to Exclude Stempel's Expert Testimony is **DENIED**.

B.      Dominion Resources' Motion to Exclude Expert Testimony of Tommy Michaels

Alstom offers the expert opinion of Tommy Michaels, a professional with 46 years of experience as a claims handler, claims manager, and claims consultant in the insurance industry.  See Expert Report of Tommy R. Michaels ("Michaels Report") (Doc. No. 118-1) at 2.  Michaels' expert report contains three opinions:

> 1. In my opinion, Non-eroding policy limits for CGL policies are not "standard," especially for the kinds of insurance policies involved in this litigation.
>
> 2. In my opinion, Alstom met the requirements of insurance in the Alliance agreement.  In a commercial contract like the Alliance agreement, Dominion would be expected to specify that non-eroding limits are required for insurance policies in the same way it specified that products/completed operations liability and personal injury liability insurance coverages were required.
>
> 3. In my opinion, Alstom met the requirements of the Alliance Agreement regarding waiver of insurance rights of recovery.

Id. at 3.

1.      Lack of Foundation (Opinions 1 and 2)

Dominion Resources seeks to exclude Michaels' first and second opinions on the ground that they lack a foundation.  See Dominion Resources' Memorandum in Support of Motion to Exclude ("Dominion Resources' Mem. in Supp.") (Doc. No. 118) at 5–9. Specifically, they challenge his qualifications as an expert because his experience in the

insurance industry does not sufficiently address the specific issues of a commercial general liability policy between two large insureds. See id. at 6–7. They argue that his opinion fails to show how his experience led to his conclusion, relying instead on mere ipse dixit by reference to his credentials. See id. at 7–8. Alstom counters that Michaels has direct experience negotiating insurance policies for large insureds, and that the opinion is not mere ipse dixit because his opinions flow directly from his experience. See Alstom's Memorandum in Opposition to Motion to Exclude ("Alstom's Mem. in Opp.") (Doc. No. 122) at 14.

Ironically, Dominion Resources' challenge to Michaels' testimony mirrors in part Alstom's challenge to Stempel's testimony. Each argues that the other's expert's expertise is insufficiently tailored to the specific type of insurance contract at issue in this case. Dominion Resources specifically points to the fact that 20 percent or less of the claims that Michaels reviewed for Hartford Insurance Group between 1971 and 1992 involved commercial general liability policies. See Dominion Resources' Mem. in Supp. at 6. Dominion Resources also challenges his focus on small to mid-size claims from 1971 to 1992, his focus on environmental and asbestos rather than commercial claims from 1992 to 2007, and the fact that his expert testimony and publications did not specifically address eroding policy limits. See id.

As with Stempel, the court finds that Michaels is sufficiently qualified to testify in the field of insurance contracts, and that his expertise is sufficiently related to the subject matter. Michaels has worked for over 46 years as a claims handler, manager, and consultant within the property and casualty insurance industry. See Michaels Report at 2. His experience includes commercial claims. See id. (including claims for

commercial property).  It also includes commercial general liability policies, although Dominion Resources challenges the relative quantity.  See Deposition of Tommy Michaels ("Michaels Depo.") (Doc. No. 118-2) at 47.  Michaels also has a number of certifications, including Chartered Property and Casualty Underwriter (CPCU), Associate in Claims (AIC), Associate in Reinsurance (ARe), Associate in Risk Management (ARM), and Senior Claim Law Associate (SCLA).  See Michaels Report at 2.  An expert's qualifications may appropriately be based on practical expertise rather than formal education.  See Valentin, 1997 WL 33323099, at *15.

As noted above with Stempel, an expert's testimony may be excluded because it is too general, but an expert need not be precluded "from testifying merely because he or she does not possess experience tailored to the precise product or process that is the subject matter of the dispute."  Stagl, 117 F.3d at 81; Yaccarino, 2006 WL 5230033, at *9; Colon, 199 F.Supp.2d at 73; Deutsch, 768 F.Supp.2d at 425.  The court declined to exclude Stempel's testimony on the ground that his expertise was not specific to large commercial insureds or that his publications, classes, or former expert testimony did not address whether commercial general liability insurance requires non-eroding limits.  See supra at 7–15.  The court now applies the same reasoning to Michaels' testimony.  The fact that Michaels' experience was not specialized to the particular type of transaction involved in this case does not warrant its exclusion.  The court concludes that his expertise is sufficiently related to the subject matter, and that Dominion Resources' arguments go to the weight, not the admissibility, of Michaels' testimony. See McCulloch, 61 F.3d at 1043; Hilaire, 54 F. Supp. 3d at 236.

Additionally, as stated above, "nothing in either <u>Daubert</u> or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the <u>ipse dixit</u> of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."  <u>General Electric Co.</u>, 522 U.S. at 146.  Thus, "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, <u>Daubert</u> and Rule 702 mandate the exclusion of that unreliable opinion testimony." <u>Nimely</u>, 414 F.3d at 396–97.  When the expert opinion is based on experience, "the witness must show why the experience provides a reliable foundation for his or her testimony."  <u>Wells Fargo Bank, N.A. v. HoldCo Asset Mgmt., L.P.</u>, No. 16-CV-6356 (KBF), 2017 WL 2963501, at *12 (S.D.N.Y. July 11, 2017), <u>aff'd</u>, No. 17-2469, 2018 WL 3323346 (2d Cir. July 6, 2018) (quoting Pensi<u>on Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC</u>, 691 F. Supp. 2d 448, 473 (S.D.N.Y. 2010)).

In a number of cases, courts in this Circuit have found that an expert's experience in the field was sufficient to provide a reliable foundation for testimony about customs and practices in an industry, without requiring reference to data or studies. <u>See</u> <u>SR Int'l Bus. Ins. Co. v. World Trade Ctr. Properties, LLC</u>, 467 F.3d 107, 132 (2d Cir. 2006); <u>Corneli v. Adventure Racing Co., LLC</u>, No. 1:12-CV-1303 FJS/TWD, 2015 WL 4716285, at *12 (N.D.N.Y. Aug. 7, 2015); <u>Pearlman v. Cablevision Sys. Corp.</u>, No. 10-CV-4992(JS)(GRB), 2015 WL 8481879, at *7 (E.D.N.Y. Dec. 8, 2015); <u>Gen. Elec. Capital Corp. v. Nichols</u>, No. 3:09-CV-758 JCH, 2011 WL 1638048, at *5–*6 (D. Conn. Apr. 29, 2011); <u>Mahoney v. JJ Weiser & Co.</u>, No. 04 CIV. 2592 (VM) (H, 2007 WL 3143710, at *5 (S.D.N.Y. Oct. 25, 2007).  The expert "must show how his or her

experience . . . led to his conclusion or provided a basis for his opinion." <u>SR Int'l Bus.</u> <u>Ins.</u>, 467 F.3d at 132. In determining whether an expert has done so, "courts focus on the relationship between the experience and the opinion and whether the latter is rationally related to the former." <u>Mahoney</u>, 2007 WL 3143710, at *5.

In this case, Michaels' 46 years of experience in the industry, as described above, is sufficiently related to his opinions. Although the court is not impressed with the brevity with which he references his experience, the court is nonetheless satisfied that his experience provides the basis for his opinion. <u>See, e.g.</u>, Michaels Report at 13 ("In my 46+ years of experience in the insurance industry, it was more likely to see a CGL policy with eroding limits than a CGL policy that excludes products/completed operations liability or personal injury liability."); <u>id.</u> ("Dominion and its expert Stempel argue that because non-eroding coverage have been around since at least 1955, there was no need to include the requirement in the Alliance agreement. Based on my knowledge and experience in the insurance industry, this is an invalid argument. Non-eroding policy limits are not 'standard,' especially for the kinds of insurance policies involved in this lawsuit.").

Dominion Resources essentially reiterates the same challenge that it made to Michaels's qualifications by pointing out that Michaels' experience is not particular to large commercial insureds. <u>See</u> Dominion Resources' Mem. in Supp. at 8. The court considers Michaels' experience sufficient to provide a basis for his opinion for the same reasons laid out above, and the court declines to exclude his testimony. <u>See</u> <u>Amorgianos v. Nat'l R.R. Passenger Corp.</u>, 303 F.3d 256, 267 (2d Cir. 2002) ("The judge should only exclude the evidence if the flaw is large enough that the expert lacks

'good grounds' for his or her conclusions." (citation omitted)).  To the extent that

Michaels' experience is not narrowly tailored to the specific type of transaction in this

case, such limitations go to the weight rather than the admissibility of the testimony, and

Dominion Resources can present those limitations on cross-examination.  See Gen.

Elec. Capital Corp., 2011 WL 1638048, at *6; Pearlman, 2015 WL 8481879, at *7;

Pinello v. Andreas Stihl Ag & Co. KG, No. 8:08-CV-00452 LEK, 2011 WL 1302223, at *8

(N.D.N.Y. Mar. 31, 2011); Barrett v. Black & Decker (U.S.) Inc., No. 06 CIV.

1970(SCR)MDF, 2008 WL 5170200, at *7 (S.D.N.Y. Dec. 9, 2008).

Accordingly, Dominion Resources' Motion to Exclude for lack of foundation is

denied.  Michaels may testify as to his first opinion.  The court addresses Dominion

Resources' other argument concerning Michaels' second opinion below.

2.      Legal Conclusions (Opinions 2 and 3)

Dominion Resources seeks to exclude Michaels' second and third opinions[2] on

the ground that they each amount to an improper opinion on a legal conclusion.  See

Dominion Resources' Mem. in Supp. at 10–14.  Alstom argues that these opinions are

not legal conclusions, but merely testimony about the practices of a custom or industry.

See Alstom's Mem. in Opp. at 15–16.

Federal Rule of Evidence 704 abolished the ultimate issue rule, stating, "An

opinion is not objectionable just because it embraces an ultimate issue."  Fed. R. Evid.

704.  However, "[t]he abolition of the ultimate issue rule does not lower the bar so as to

admit all opinions."  Id., Advisory Committee Notes.  The Second Circuit has held that

---

[2] Dominion Resources also challenges the third opinion as untimely.  See Dominion Resources'
Mem. in Supp. at 12–13.  Because the court excludes the opinion as offering an improper legal
conclusion, it need not reach this other argument for exclusion.

expert testimony that expresses a legal conclusion must be excluded.  See Densberger v. United Technologies Corp., 297 F.3d 66, 74 (2d Cir. 2002); Hygh v. Jacobs, 961 F.2d 359, 363 (2d Cir. 1992); Fed. R. Evid. 704, Advisory Committee Notes (stating that courts should not admit opinions "which would merely tell the jury what result to reach" or which are "phrased in terms of inadequately explored legal criteria").  "Even if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury."  Hygh, 961 F.2d at 364.

In applying this rule, the Second Circuit has held that testimony about the customary practices of a trade or business is admissible "to enable the jury to evaluate the conduct of the parties against the standards of ordinary practice in the industry." Marx & Co. v. Diners' Club Inc., 550 F.2d 505, 509 (2d Cir. 1977).  However, "testimony encompassing an ultimate legal conclusion based upon the facts of the case is not admissible, and may not be made so simply because it is presented in terms of industry practice."  United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991).

In the context of contract claims, courts have held that an expert may not testify as to the parties' obligations under the contract or whether the contract was breached. See Marx, 550 F.2d at 508–10 (holding that the district court erred in permitting the expert "to give his opinion as to the legal obligations of the parties under the contract"); Sigmon for Hindin v. Goldman Sachs Mortg. Co., No. 1:12-CV-3367 (ALC), 2018 WL 1517189, at *4 n.4 (S.D.N.Y. Mar. 26, 2018) ("[I]t is well-settled that contract interpretation is not a proper subject of expert testimony."); SLSJ, LLC, 277 F. Supp. 3d at 289 (excluding expert testimony that the expert "'read the SunRealty LLC Operating

Agreement' and is 'aware that Plaintiff was not contractually obliged to make capital contributions"); Sec. & Exch. Comm'n v. Gruss, 245 F. Supp. 3d 527, 594 (S.D.N.Y. 2017); Pearlman, 2015 WL 8481879, at *7–*8 (excluding expert testimony that "essentially interprets the Terms of Service and speaks to what is necessary for Cablevision to fulfill the covenant of the contract" (internal quotation marks and citation omitted)); Triboro Quilt Mfg. Corp. v. Luve LLC, No. 10 CV 3604 VB, 2014 WL 1508606, at *7 (S.D.N.Y. Mar. 18, 2014); Luizzi v. Pro Transp., Inc., No. 02 CV 5388 CLP, 2011 WL 1655567, at *2–*3 (E.D.N.Y. May 2, 2011); Pension Comm., 691 F. Supp. 2d at 470–71; Kidder, Peabody & Co. v. IAG Int'l Acceptance Grp., N.V., 14 F. Supp. 2d 391, 404 (S.D.N.Y. 1998) (excluding expert testimony on "his construction of the contract and the parties' obligations thereunder"); Breezy Point Co-op., Inc. v. Cigna Prop. & Cas. Co., 868 F. Supp. 33, 36 (E.D.N.Y. 1994).

In this case, Michaels is permitted to testify, under his second opinion, as to whether it is customary practice in the industry for insureds to specify whether a policy with non-eroding limits is required.[3] See In re PCH Assocs., 60 B.R. 870, 875 (S.D.N.Y.), aff'd, 804 F.2d 193 (2d Cir. 1986) (permitting testimony that "certain provisions contained in the agreement are not ordinarily included in a true lease or

---

[3] The second opinion states, "In my opinion, Alstom met the requirements of insurance in the Alliance agreement. In a commercial contract like the Alliance agreement, Dominion would be expected to specify that non-eroding limits are required for insurance policies in the same way it specified that products/completed operations liability and personal injury liability insurance coverages were required." Michaels Report at 3. Although the Report frames the second sentence in the context of Dominion specifically, the court concludes that the second sentence could be read as opining that it is customary for commercial entities that want non-eroding policies to make that expectation known. If framed as such, the testimony would not be a legal conclusion and would be admissible.

Michaels may not, however, then testify that, because Dominion Resources does not make its expectation known in the contract, the language in the contract should be construed to not require a non-eroding policy. The latter impermissibly purports to testify to the parties' obligations under the contract.

contract for sale"); <u>Nuvest, S. A. v. Gulf & W. Indus., Inc.</u>, 649 F.2d 943, 950 (2d Cir. 1981) (permitting testimony as to whether certain warranties were normal or customary); <u>Pension Comm.</u>, 691 F. Supp. 2d at 470–71 (permitting testimony "about the standard practices employed by industry participants in calculating the NAV," but excluding a "legal interpretation of the term as found in the . . . documents").

However, the remainder of the second opinion, as well as the entirety of the third opinion, go beyond the customs and practices of the industry and constitute an impermissible legal conclusion. Michaels may not opine, as he does in both his second and third opinions at page 3 of his Report, on the type of policy required under the Alliance Agreement by disguising such an opinion in the language of industry custom. <u>See</u> <u>Luizzi</u>, 2011 WL 1655567, at *3 (rejecting the party's "attempts to cloak the testimony as being about industry customs" when it is "still an opinion as to the scope of the obligations created by the contract, which is not a proper subject matter for an expert opinion"). Nor may Michaels opine on whether Alstom met the requirements of the Alliance Agreement, as he does in the first sentence of his second opinion and in his third opinion, <u>see</u> Michaels Report at 3. Such opinions require Michaels to construe the terms of the Alliance Agreement, which is an inappropriate subject matter for expert testimony. <u>See</u> <u>supra</u> at 22–23; <u>Kidder</u>, 14 F. Supp. 2d at 402 ("To the extent that Professor Miller would seek to opine before the jury that Kidder had probable cause to believe IAG breached its contract with Kidder, he would inevitably have to discuss his construction of the contract and the parties' obligations thereunder—as he does at length in the sub-paragraphs to his written report."). By deciding whether Alstom breached the Alliance Agreement, these opinions are inadmissible legal conclusions

and "merely tell the jury what result to reach." <u>See</u> Fed. R. Evid. 704, Advisory Committee Notes.

In sum, to the extent that Michaels' second opinion is limited to whether, based on his experience, it is customary practice in the industry to specify certain policy requirements, the testimony is admissible. However, to the extent that Michaels' second opinion purports to address the meaning of the contract language in the Alliance Agreement or whether Alstom met the requirements therein, that testimony is excluded. Michaels' third opinion is excluded in its entirety, as it usurps the role of the court in offering a legal conclusion on the interpretation of the contract and the role of the jury in concluding that the contract was not breached.

        3.        Opinions Not Enumerated in the "Summary of Opinions"

Finally, Dominion Resources argues that Michaels' Report expresses opinions not enumerated in his "Summary of Opinions." <u>See</u> Dominion Resources' Mem. in Supp. at 14. They argue that he has disavowed these additional opinions by agreeing that he offers no opinions beyond the three listed in the Summary. <u>See</u> <u>id.</u> Dominion Resources then goes on to identify 9 sentences from the Report that it characterizes as "subsidiary conclusions" and seeks to exclude these sentences on the grounds that they are speculation concerning parties' state of mind or that Michaels lacks expertise to opine on certificates of insurance. <u>See</u> <u>id.</u> at 14–16.

The court disagrees with Dominion Resources' characterization of these 9 sentences as "opinions." Michaels does represent that he provides no other opinions besides the three stated in the "Summary of Opinions" section. <u>See</u> Michaels' Depo. at 12. He then states, however, that the "Analysis" section "lay[s] out the situation as to what was the basis of the dispute and give[s] a background to the opinions." <u>Id.</u> The

court concludes that the 9 sentences identified by Dominion Resources are not additional opinions that were inappropriately omitted from the "Summary of Opinions" but, rather, are part of the bases that supports the three opinions Michaels does provide.

The court does not agree with all of Dominion Resources' characterizations of these statements, for example, as speculation of the parties' state of mind. However, given that these 9 statements are not Michaels' expert "opinion," the court considers it unnecessary at this juncture to evaluate Michaels' Report sentence by sentence to determine the "admissibility" of each statement.

## V. CONCLUSION

For the reasons stated above, the Motion to Exclude Stempel's Expert Testimony is **DENIED**. The Motion to Exclude Michaels' Expert Testimony is **GRANTED IN PART AND DENIED IN PART**. Michaels' first opinion is admitted, and his third opinion is excluded. His second opinion is permitted to the extent that he opines on the customary practices of the industry, as described above in the Ruling, and is excluded to the extent that he opines on the construction of the Alliance Agreement or whether Alstom has satisfied the requirements thereunder.

**SO ORDERED.**

Dated at New Haven, Connecticut this 6th day of August, 2018.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge