UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DOMINION RESOURCES, INC., et al., : | |
|    Plaintiffs, : | CIVIL ACTION NO. |
| : | 3:16-CV-544 |
| v. : | |
| : | |
| ALSTOM POWER, INC., : | August 14, 2018 |
|    Defendant. : | |

**AMENDED ORDER CERTIFYING QUESTION RE: ALSTOM'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 131) TO THE SUPREME COURT OF VIRGINIA[1]**

**I.  INTRODUCTION**

This case involves a breach of contract dispute between the plaintiffs, Dominion Resources Services, Inc., Dominion Resources, Inc., Dominion Energy, Inc., Dominion Generation Corp., and Dominion Technical Solutions, Inc. (collectively "Dominion Resources"), and the defendant, Alstom Power, Inc. ("Alstom").  On December 1, 2016, Dominion Resources filed the Amended Complaint, alleging two counts of breach of contract against Alstom.  See Amended Complaint ("Am. Compl.") (Doc. No. 45).  On December 15, 2016, Alstom filed its Answer, Defenses, and Counterclaims.  See Answer, Defenses, and Counterclaims ("Answer") (Doc. No. 48).  Alstom asserted, inter alia, the defense that "Plaintiffs have already recovered from their insurers the amounts claimed in this lawsuit; and Plaintiffs may not recover from Defendant amounts already paid to Plaintiffs by their insurers."  Id. at ¶ 67.  Alstom also advanced three counterclaims for contractual indemnity, indemnity at law, and breach of contract.  See id. at ¶¶ 100–09.

---

[1] The order certifying the question was amended to add counsel information obtained after the original order was entered, in compliance with Va. Sup. Ct. R. 5:40.  See Va. Sup. Ct. R. 5:40(c)(5).

1

On October 27, 2017, the parties cross-moved for summary judgment. See Motion for Summary Judgment by Dominion Resources ("Dominion Resources' MFSJ") (Doc. No. 129); Motion for Summary Judgment Dismissing Plaintiffs' Breach of Contract Claims ("Alstom's MFSJ") (Doc. No. 131); Motion for Summary Judgment Dismissing Plaintiffs' Claims as Barred by Statute of Limitations (Doc. No. 132); Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment (Doc. No. 134). The parties both seek summary judgment on a number of grounds. Among them, Alstom seeks summary judgment on both of Dominion Resources' breach of contract claims on the ground that Dominion Resources has not suffered any recoverable damages because they have been paid by their insurer, Associated Electric & Gas Insurance Services, Ltd. ("AEGIS"), for the full amount sought in this action. See Alstom's MFSJ at 20–28. Alstom argues that Dominion Resources should be barred from obtaining double recovery and that the collateral source rule does not apply to breach of contract actions. See id. Dominion Resources does not dispute that it was reimbursed by AEGIS, but argues that the collateral source rule should apply to prevent the court from considering AEGIS's reimbursement. See Memorandum in Opposition to Alstom's Motions for Summary Judgment ("Dominion Resources' Mem. in Opp.") (Doc. No. 137) at 33–36.

The parties agree that Virginia law governs the contract between them. See Alstom's Local Rule 56(a)(1) Statement of Facts ("Alstom's L.R.56(a)(1)") (Doc. No. 135) at ¶ 3; Dominion Resources' Local Rule 56(a)(2) Statement of Facts ("Dominion Resources' L.R.56(a)(2)") (Doc. No. 138) at ¶ 3. No controlling precedent from the Supreme Court or the Court of Appeals of Virginia has addressed whether the collateral

source rule applies to breach of contract actions. See, e.g., Acuar v. Letourneau, 260 Va. 180, 188 n.7 (2000); see also supra at 11–13 (citing other cases). Absent objection from the parties, the court certifies the following question to the Supreme Court of Virginia and stays resolution of this case in the interim:

> Does Virginia law apply the collateral source rule to a breach of contract action where the plaintiff has been reimbursed by an insurer for the full amount it seeks in damages from the defendant?

In order to facilitate the work of the Supreme Court of Virginia, and in compliance with Rule 5:40, see Va. Sup. Ct. R. 5:40(c), the court explains below the relevant facts and the contested issue of law.

## II. LEGAL STANDARD

The Rules of the Supreme Court of Virginia permit "a United States district court" to certify a question to the Supreme Court of Virginia "if a question of Virginia law is determinative in any proceeding pending before the certifying court and it appears there is no controlling precedent on point in the decisions of [the Supreme Court] or the Court of Appeals of Virginia." Va. Sup. Ct. R. 5:40(a). The Second Circuit has held that courts should "not certify every case that meets this criteria, but instead evaluate at least three factors in determining whether certification is appropriate: (1) the absence of authoritative state court decisions; (2) the importance of the issue to the state; and (3) the capacity of certification to resolve the litigation." Casey v. Merck & Co., Inc., 653 F.3d 95, 101 (2011) (certifying a question to the Virginia Supreme Court under Rule 5:40(a)) (internal quotation marks and citation omitted).

Under Rule 5:40, a certification order should contain:

> (1) the nature of the controversy in which the question arises;

3

(2) the question of law to be answered;

(3) a statement of all facts relevant to the question certified;

(4) the names of each of the parties involved;

(5) the name, Virginia State Bar number, mailing address, telephone number (including any applicable extension), facsimile number (if any), and e-mail address (if any) of counsel for each of the parties involved;

(6) a brief statement explaining how the certified question of law is determinative of the proceeding in the certifying court; and

(7) a brief statement setting forth relevant decisions, if any, of [the Supreme Court] and the Court of Appeals of Virginia and the reasons why such decisions are not controlling.

Va. Sup. Ct. R. 5:40(c).

### III.  FACTUAL BACKGROUND

The plaintiffs (and counter-defendants) are Dominion Resources Services, Inc., Dominion Resources, Inc., Dominion Energy, Inc. (on behalf of itself and as successor to Dominion Energy Salem Harbor, LLC), Dominion Generation Corp., and Dominion Technical Solutions, Inc. (collectively "Dominion Resources").  All of the plaintiffs are corporations incorporated in Virginia.  See Am. Compl. at ¶¶ 1–5.  The defendant (and counter-plaintiff) is Alstom Power, Inc. ("Alstom"), a corporation incorporated in Delaware.  See id. at ¶ 6.  Unless otherwise specified, the following facts are undisputed by the parties.

Dominion Resources and Alstom entered into a contract (the "Alliance Agreement") on February 1, 2005.  See Dominion Resources' Local Rule 56(a)(1) Statement of Facts ("Dominion Resources' L.R.56(a)(1)") (Doc. No. 133) at ¶ 1; Alstom's L.R.56(a)(1) at ¶ 1.  The Alliance Agreement governed services performed by

4

Alstom at Dominion Resources' power generation facilities, pursuant to purchase orders issued by Dominion Resources and accepted by Alstom.  See id.  Among other things, the Alliance Agreement provides that Dominion Resources and Alstom will each "indemnify, save harmless and . . . defend" the other for certain claims as specified in the Alliance Agreement.  See Alstom's L.R.56(a)(1) at ¶ 5; Dominion Resources' L.R.56(a)(2) at ¶ 5; Dominion Resources' L.R.56(a)(1), Ex. 1 ("Alliance Agreement"), Terms and Conditions, at 10–11.  The Alliance Agreement also requires Alstom to obtain certain insurance policies, including "commercial general liability insurance" with coverage and limits specified in the Alliance Agreement.  See Alstom's L.R.56(a)(1) at ¶ 6; Dominion Resources' L.R.56(a)(2) at ¶ 6; Alliance Agreement, Terms and Conditions, at 14.

Alstom obtained an insurance policy (the "Zurich Policy") from Zurich American Insurance Company for the period of April 1, 2007, to April 1, 2008.  See Dominion Resources' L.R.56(a)(1) at ¶ 2; Alstom's Local Rule 56(a)(2) Statement of Facts ("Alstom's L.R.56(a)(2)") (Doc. No. 140) at ¶ 2.  The Zurich Policy has an aggregate limit of liability of $5 million, and Dominion Resources is named as an additional insured.  See id.  Alstom also obtained a commercial umbrella insurance policy (the "Allianz Policy") from Allianz Global Risks U.S. Insurance Company for the same time period with a policy limit of $18 million.  See Alstom's L.R.56(a)(1) at ¶ 25; Dominion Resources' L.R.56(a)(2) at ¶ 25.  Both the Zurich Policy and the Allianz Policy were "eroding" policies, such that the costs of defense reduce the amount of insurance

available under the liability limit.[2]  See Alstom's L.R.56(a)(1) at ¶ 13; Dominion Resources' L.R.56(a)(2) at ¶ 13.

Pursuant to a purchase order under the Alliance Agreement, Alstom performed an inspection of a boiler at a Dominion Resources power generation facility in Massachusetts in April 2007.  See Dominion Resources' L.R.56(a)(1) at ¶ 6; Alstom's L.R.56(a)91) at ¶ 33.  On November 6, 2007, an accident occurred involving the boiler inspected by Alstom, and five individuals were injured as a result, three fatally so.  See Dominion Resources' L.R.56(a)(1) at ¶ 7; Alstom's L.R.56(a)(1) at ¶ 36.  In May 2009, the decedents' estates and the injured workers filed a lawsuit against Dominion Resources, Alstom, and other defendants in Massachusetts Superior Court.  See Dominion Resources' L.R.56(a)(1) at ¶ 8; Alstom's L.R.56(a)(1) at ¶¶ 37–39.

Ultimately, the parties in the Massachusetts state court litigation reached a settlement agreement.  See Dominion Resources' L.R.56(a)(1) at ¶ 13; Alstom's L.R.56(a)(1) at ¶¶ 48.  The parties dispute when the settlement agreement was finalized (sometime between February and May of 2015), but do not dispute that a settlement was reached or the amount of the settlement.  See Alstom's L.R.56(a)91) at ¶¶ 49–63; Dominion Resources' L.R.56(a)(1) at ¶ 13; Alstom's L.R.56(a)(2) at ¶ 13.  Dominion Resources paid in excess of $5 million in the settlement to the plaintiffs of the Massachusetts litigation.  See Alstom's L.R.56(a)(1) at ¶ 64; Dominion Resources' L.R.56(a)(2) at ¶ 64.  Dominion Resources also claim they paid in excess of $9.9 million

---

[2] Although the parties dispute whether the initial forms for the Zurich Policy specified an eroding or non-eroding policy, the parties agree that, as of an Endorsement to the Zurich Policy issued in October 2010, and effective April 1, 2007, the policy was an eroding policy.  See Dominion Resources' L.R.56(a)(1) at ¶ 5; Alstom's L.R.56(a)(2) at ¶ 5.

6

to defend themselves in the Massachusetts litigation. See Alstom's L.R.56(a)(1) at ¶ 65; Dominion Resources' L.R.56(a)(2) at ¶ 65.

Dominion Resources received an amount in excess of $5 million from the Zurich Policy and the Allianz Policy obtained by Alstom. See Alstom's L.R.56(a)(1) at ¶ 71; Dominion Resources' L.R.56(a)(2) at ¶ 71. Dominion Resources had also independently obtained an excess insurance policy (the "AEGIS Policy") from AEGIS. See Dominion Resources' L.R.56(a)(1) at ¶ 14; Alstom's L.R.56(a)(2) at ¶ 14. Alstom did not pay any portion of the premium for the AEGIS Policy. See id. Dominion Resources received from AEGIS all of the additional amounts that Dominion Resources paid to defend and settle the Massachusetts litigation. See Alstom's L.R.56(a)(1) at ¶ 72; Dominion Resources' L.R.56(a)(2) at ¶ 72. The parties do not dispute that, through a combination of the Zurich Policy, the Allianz Policy, and the AEGIS Policy, Dominion Resources has been fully reimbursed for the amount that it claims to have paid to defend and settle the Massachusetts litigation. See Alstom's L.R.56(a)(1) at ¶ 66; Dominion Resources' L.R.56(a)(2) at ¶ 66.

AEGIS has not made any claims against Alstom for reimbursement of the amounts it paid to Dominion. See Alstom's L.R.56(a)(1) at ¶ 73; Dominion Resources' L.R.56(a)(2) at ¶ 73. If Dominion Resources recovers any monetary damages from Alstom in the case currently before this court, AEGIS has represented that Dominion Resources has the option, but is not required, to reimburse AEGIS for payments made under the AEGIS Policy. See Alstom's L.R.56(a)(1) at ¶ 74; Dominion Resources' L.R.56(a)(2) at ¶ 74. If Dominion Resources chooses to reimburse AEGIS, such reimbursement would improve Dominion Resources' loss history and reduce its

premiums on future insurance policies.  See Alstom's L.R.56(a)(1) at ¶ 75; Dominion Resources' L.R.56(a)(2) at ¶ 75.

In the case before this court, Dominion Resources alleges that Alstom breached the Alliance Agreement, first, by failing to defend it in the Massachusetts litigation and, second, by obtaining eroding insurance policies rather than non-eroding policies.[3]  See Am. Compl. at ¶¶ 43–52.  The damages Dominion Resources seeks for the alleged breaches of contract is the amount of the costs of the defense that were not covered by the Zurich and Allianz Policies.[4]  See Am. Compl. at ¶¶ 41–42; see also Dominion Resources' Mem. in Opp. at 36.  This is the same as the amount covered by the AEGIS Policy.

## IV.  DISCUSSION

Alstom argues that a plaintiff cannot obtain double recovery for a breach of contract action because a party that has already recovered from collateral sources has

---

[3] Alstom and Dominion Resources dispute a number of factual and legal issues related to whether Alstom did in fact breach the Alliance Agreement.  For instance, they dispute, inter alia, whether the Alliance Agreement called for a non-eroding policy, whether the claims are untimely, whether Dominion Resources triggered Alstom's duty to defend, and whether Dominion Resources is prevented from recovering due to its own material breach of the contract.  See generally Dominion Resources' MFSJ; Alstom's MFSJ; Motion for Summary Judgment Dismissing Plaintiffs' Claims as Barred by Statute of Limitations (Doc. No. 132); Motion for Judgment on the Pleadings and Alternative Motion for Summary Judgment (Doc. No. 134).  None of these arguments are relevant to the issue of whether Dominion Resources' reimbursement from a collateral source, AEGIS, prevents it from recovering on either breach of contract claim.  Therefore, the court does not elaborate on these other arguments here.

[4] Alstom includes a corollary argument that any alternative damages, such as increased insurance premiums or Dominion's settlement with Alstom's insurers, were not caused by Alstom's alleged breach and, alternatively, are barred by the Alliance Agreement's damage exclusions and limitation of liability terms.  See Alstom's MFSJ at 28–33.  These alternative damages are not at issue here, however, because Dominion Resources' response makes clear that they are not seeking any of these alternative damages, only the costs of the defense that were not covered by the Zurich and Allianz Policies.  See Dominion Resources' Mem. in Opp. at 36 ("The damages that Dominion seeks to recover in the present litigation are its defense costs in the Underlying Litigation—costs it incurred precisely because Alstom failed to fulfill its obligations under the Alliance Agreement to either defend Dominion or to purchase non-eroding CGL insurance.").  Other than emphasizing that the damages it seeks are its defense costs, Dominion makes no response to Alstom's arguments pertaining to other measures of damages.  See id. at 36–37.

8

not suffered an actual loss.  See Alstom's MFSJ at 20–22.  Therefore, because Dominion Resources was already reimbursed by AEGIS for the damages sought in this lawsuit, Dominion Resources is not entitled to relief against Alstom.  See id.  Alstom further argues that, under Virginia law, the collateral source rule does not apply to the breach of contract action here because no precedent from the Supreme Court or Court of Appeals of Virginia has applied the collateral source rule outside of a tort context.  See id. at 22–28.  Alstom contends that the policy justifications for the collateral source rule do not pertain to contract claims because the purpose of contract damages is not deterrence and punishment, but purely compensation for actual damages, and the collateral source rule would award the plaintiff more than necessary to compensate for the breach.  See id.

Dominion Resources argues, to the contrary, that the collateral source rule should apply to this case to bar the court from considering AEGIS's payment to Dominion Resources.  See Dominion Resources' Mem. in Opp. at 34–36.  Dominion Resources acknowledges that the Supreme Court of Virginia has not decided whether the collateral source rule applies to contract actions, but argues that Virginia law applies the collateral source rule to tort actions and that the policy justifications apply equally here as they would to a tort action.  See id.  Dominion Resources reasons that the rationale behind the collateral source rule is to prevent unjust enrichment for the wrongdoer and, therefore, that rationale would argue against allowing Alstom to receive a windfall from its wrongdoing by escaping its contractual obligations.  See id.

Therefore, the issue before the court is whether, under Virginia law, the collateral source rule applies to prevent the court from considering payments from an insurer in a breach of contract action.

    A.    <u>Absence of Controlling Virginia Law</u>

In determining issues of state law, the court looks "principally to the opinions of that state's courts." <u>Casey</u>, 653 F.3d at 100. "A federal court faced with a question of unsettled state law must do its best to guess how the state court of last resort would decide the issue." <u>In re Brooklyn Navy Yard Asbestos Litig.</u>, 971 F.2d 831, 850 (2d Cir. 1992). When the state court of last resort has not addressed the issue, "the best indicators of how it would decide are often the decisions of lower state courts." <u>Id.</u> "Where, as here, a question of state law has not been conclusively resolved by [state] courts, [the Second Circuit's] general practice is to look next to the law of the circuit in which the state is located, here the Fourth Circuit." <u>Casey</u>, 653 F.3d at 100.

As a general matter, "[t]he object of the law in awarding damages is to make amends, or reparations, by putting the party injured in the same position, as far as money can do it, as he would have been if the contract had been performed." <u>Appalachian Power Co. v. John Stewart Walker, Inc.</u>, 214 Va. 524, 535 (1974) (quoting <u>Lehigh Portland Cement Co. v. Virginia Steamship Co.</u>, 132 Va. 257, 270 (1922)). "A plaintiff is not allowed to recover for a breach of contract more than the actual loss sustained by him, nor is he allowed to be put in a better position than he would have been had the wrong not been done and the contract not been broken." <u>Orebaugh v. Antonious</u>, 190 Va. 829, 834 (1950); see also <u>Berman v. Johnson</u>, 315 Fed. App'x 461, 463 (4th Cir. 2009).

Under the collateral source rule, "compensation or indemnity received by a tort victim from a source collateral to the tortfeasor may not be applied as a credit against the quantum of damages the tortfeasor owes." Schickling v. Aspinall, 235 Va. 472, 474 (1988); see also Restatement (Second) of Torts § 920A (1979) ("Payments made to or benefits conferred on the injured party from other sources are not credited against the tortfeasor's liability, although they cover all or a part of the harm for which the tortfeasor is liable."). The collateral compensation involved has often included "money paid the plaintiff by his own insurer." Schickling, 235 Va. at 474. The Supreme Court of Virginia has applied the collateral source rule in tort cases for more than a century. Id. at 475.

Despite the longstanding application of the collateral source rule to tort cases, the Supreme Court of Virginia has never addressed whether the collateral source rule applies to breach of contract cases. See CPM Virginia, LLC v. MJM Golf, LLC, 291 Va. 73, 80 n.1 (2015) ("We have never applied the rule outside the tort context. . . . Given our holding on the breach-of-warranty claim, we need not address CPM's contention that the collateral source rule should not be extended beyond its presently recognized boundaries."); Herman v. McCarthy Enterprises, Inc., 63 Va. Cir. 181, at *2 (2003) (deciding the case on the grounds that the collateral source rule does not apply to settlement proceeds without addressing whether it applies to breach of contract actions); Acuar v. Letourneau, 260 Va. 180, 188 n.7 (2000) ("The rule also applies to actions ex contractu in some jurisdictions. This Court has never considered that question, and need not do so today." (citations omitted)); Schickling, 235 Va. at 475 ("We have never had occasion to consider whether the collateral source rule applies to contract cases. And in this case, the rule is inapposite.").

11

This court is unaware of any case in which the Court of Appeals of Virginia or the Fourth Circuit has spoken on this question, nor have the parties identified any such case. The court has identified only two Virginia Circuit Court opinions and one district court opinion from the Eastern District of Virginia that have addressed the question. In Toulson v. Ampro Fisheries, Inc., the district court for the Eastern District of Virginia, applying Virginia law, declined to apply the collateral source rule to a contract cause of action for maintenance and cure in a maritime case. See Toulson v. Ampro Fisheries, Inc., 872 F. Supp. 271, 276 (E.D. Va. 1995) ("First, the collateral source rule is generally applicable only in the area of tort, not contract. As stated previously, an action for maintenance and cure sounds in contract . . . ; thus, the collateral source rule generally does not apply to Plaintiffs' contractual cause of action for maintenance and cure.").

On the other hand, the Virginia Circuit Court in Glorious Church of God in Christ v. Aetna Casualty and Surety Co. disagreed with Toulson. See Glorious Church of God in Christ v. Aetna Cas. & Sur. Co., No. LC-1227-3, 1998 WL 972132, at *2 (Va. Cir. Ct. Mar. 9, 1998). Recognizing the absence of precedent from its Supreme Court, the Glorious Church court applied the collateral source rule to an insurance contract action. See id. The Virginia Circuit Court in CPM Virginia, LLC v. MJM Golf, LLC likewise applied the collateral source rule to a breach of contract action. See CPM Virginia, LLC v. MJM Golf, LLC, No. CL130591, 2014 WL 9868536, at *1 (Va. Cir. Ct. 2014), rev'd, 291 Va. 73 (2015) ("The fact that Dominion advanced funds to MJM to pay off the debts that MJM incurred as a result of CPM's breach of warranty pursuant to the Maintenance Agreement . . . is irrelevant to this dispute under the collateral source rule. . . . To hold otherwise would permit a windfall to CPM caused by its own breach of contract."). CPM

12

Virginia was reversed by the Supreme Court of Virginia on other grounds, and the Supreme Court declined to address the trial court's application of the collateral source rule. See CPM Virginia, 291 Va. at 80 n.1.

In two additional cases, the courts did not decide the question, but mentioned the issue in dicta. The Virginia Circuit Court in Murdick v. Georgelas & Sons, Inc. decided the case on other grounds because the contract stipulated to fixed liquidated damages, but stated in passing, "While the 'collateral source' doctrine has been consistently applied in tort cases in Virginia, its application to contract actions is questionable." Murdick v. Georgelas & Sons, Inc., 26 Va. Cir. 248, at *3 (1992). In MP Leasing Corp. v. Colonna's Shipyard, the district court for the Eastern District of Virginia declined to address the question, but included language in dicta implying that equity would support the application of the collateral source rule. See MP Leasing Corp. v. Colonna's Shipyard, No. CIV.A. 2:07CV273, 2009 WL 2581575, at *9 (E.D. Va. May 8, 2009) ("Further, although this Court declines to address the applicability of Virginia's collateral source rule to this dispute, the Court notes that equity also supports a finding of recovery. Even though Plaintiffs' insurer has not yet requested reimbursement for the survey fees and Plaintiffs have yet to pay the deductible, Defendant should not benefit from Plaintiffs' insurance benefits for which Plaintiff has paid a premium.").

Thus, not only is there a lack of controlling precedent from the Supreme Court or Court of Appeals of Virginia, but the cases from the Virginia Circuit Court and the district courts are few in number and do not indicate a clear consensus in one direction or the other. See Dibella v. Hopkins, 403 F.3d 102, 111 (2d Cir. 2005) (stating that one circumstance in which certification may be used is "where there is a split of authority on

13

the issue"). The court therefore believes it "lack[s] sufficient indicia of Virginia state law" such that certification is appropriate. See Casey, 653 F.3d at 103.

B.  Importance of the Issue to the State

The policy purpose behind the collateral source rule is "designed to strike a balance between two competing principles of tort law: (1) a plaintiff is entitled to compensation sufficient to make him whole, but no more; and (2) a defendant is liable for all damages that proximately result from his wrong." Schickling, 235 Va. at 474–75. In striking the balance for tort cases, Virginia law has decided to prioritize the second principle: "A plaintiff who receives a double recovery for a single tort enjoys a windfall; a defendant who escapes, in whole or in part, liability for his wrong enjoys a windfall. Because the law must sanction one windfall and deny the other, it favors the victim of the wrong rather than the wrongdoer." Id. at 475.

The court considers it to be an important question of state law how Virginia law will strike that balance in breach of contract cases, which may or may not be the same as in tort cases. Such an issue may be important to the state, for example, because of its implications for the "sanctity of contract" and because of the potential for sizeable windfalls on either side. Cf. Dunlap v. Cottman Transmissions Systems, LLC, 539 Fed. App'x 69, 73 (4th Cir. 2013) (finding the question of whether negotiations about potentially breaching an existing contract are conspiratorial for purposes of tortious interference to be an important question of state policy because "[d]oing so elevates the sanctity of contract, but perhaps too far" and thus "[a] state court could easily conclude that it is adequate, and more likely to encourage efficient business decisions, to give the harmed party only the benefit of its contractual expectations through a simple breach of contract action against its counter-party").

14

C. Capacity to Resolve the Litigation

Finally, the issue of whether the collateral source rule applies has the capacity to dispose of all of Dominion Resources' claims in the case.[5] The parties agree that Dominion Resources has been reimbursed by AEGIS for any costs relating to the Massachusetts litigation and settlement that were not covered under the Zurich Policy or the Allianz Policy. See Alstom's MFSJ at 20; Dominion Resources' MFSJ at 31–32; Alstom's L.R.56(a)(1) at ¶¶ 66, 72; Dominion Resources' L.R.56(a)(2) at ¶¶ 66, 72. Those reimbursements cover the entirety of the damages sought by Dominion Resources under both Count One and Count Two of the Amended Complaint. See Am. Compl. at ¶¶ 42, 46–47, 51–52; Dominion Resources' Mem. in Opp. at 36. Thus, there are no factual issues in dispute with regards to this issue.

If the collateral source rule does not apply to breach of contract actions such as this, Dominion Resources would be barred from obtaining the relief that it seeks, and summary judgment would be granted for Alstom on all of Dominion Resources' claims. Resolution of this issue is independent of Alstom's or Dominion Resources' other arguments for summary judgment and, if decided for Alstom, would obviate the need for the court to reach these other issues. Thus, this unsettled question of Virginia law could be determinative of Dominion Resources' claims and is therefore appropriate for certification.

The court recognizes that, if the Supreme Court of Virginia accepts this question and answers "yes," then the dispute between Dominion Resources and Alstom would not be resolved. However, the undersigned reads the word "determinative" in Rule

---

[5] The court notes that the issue would not be determinative of Alstom's counterclaims.

15

5:40(a) of the Supreme Court of Virginia to describe the question that this court poses. The court does not read the word "determinative" to require that every answer to a certified question would necessarily end the entire litigation. See Small v. Fed. Nat'l Mortg. Ass'n, 286 Va. 119, 125 (finding a question "determinative" when the question certified pertained to standing, which was only one among a number of defenses raised and thus would have concluded the litigation only if the Supreme Court of Virginia found that there was no standing); see also Casey, 653 F.3d at 100 (finding a question "determinative" when the issue was the equitable tolling of a statute of limitations, thus concluding the litigation only if answered in a manner that declined to apply equitable tolling).

**V. COUNSEL INFORMATION**

    A.    <u>Counsel for Dominion Resources Services, Inc., Dominion Resources, Inc., Dominion Energy, Inc., Dominion Generation Corp., and Dominion Technical Solutions, Inc.</u>

Robert W. Loftin
Virginia State Bar Number: 68377
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804-775-1000
Facsimile: 804-775-1061
Email: rloftin@mcguirewoods.com

    B.    <u>Counsel for Alstom Power, Inc.</u>

James W. Walker
Virginia State Bar Number: 29257
Vandeventer Black LLP
Riverfront Plaza – West Tower
901 East Byrd Street, Suite 1600 Richmond, Virginia 23219
Telephone: 804-237-8807
Facsimile: 804-237-8801
Email: jwalker@vanblacklaw.com

and

Michael D. Fisse
Virginia State Bar Number: (Pro Hac Vice Application To Be Filed With Virginia Supreme Court)[6]
Daigle Fisse & Kessenich, PLC
227 Highway 21
Madisonville, LA 70447
Telephone: 985-871-0800
Facsimile: 985-871-0899
E-mail: mfisse@daiglefisse.com

## VI. CONCLUSION

For the reasons set forth above, the court hereby certifies the following question to the Supreme Court of Virginia:

> Does Virginia law apply the collateral source rule to a breach of contract action where the plaintiff has been reimbursed by an insurer for the full amount it seeks in damages from the defendant?

The parties shall bear equally any fees and costs that may be imposed by the Supreme Court of Virginia in connection with this certification, and are ordered to timely pay such fees and costs. See Va. Sup. Ct. R. 5:40(g) ("Fees and costs shall be the same as in civil appeals docketed in [the Supreme Court of Virginia] and shall be paid as ordered by the certifying court in its order of certification.").

This court retains jurisdiction to consider all issues that remain once the Supreme Court of Virginia has either provided its opinion or declined certification.

---

[6] Michael D. Fisse is admitted in Louisiana (Bar No. 19270), New York (Bar No. 5023346), and Texas (Bar No. 07070550); and has been admitted to this Court through pro hac vice application.

17

**SO ORDERED.**

Dated at New Haven, Connecticut this 14th day of August, 2018.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge