**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DOMINION RESOURCES | : | |
| SERVICES, INC. et al., | : | CIVIL ACTION NO. |
|     Plaintiffs, | : | 3:16-cv-544 (JCH) |
| | : | |
|   v. | : | |
| | : | JULY 12, 2019 |
| ALSTOM POWER, INC., | : | |
|     Defendant. | : | |

### RULING RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT AND DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. NOS. 129, 131, 132, 134)

Plaintiffs, Dominion Resources Services, Inc., Dominion Resources, Inc., Dominion Energy, Inc., Dominion Generation Corporation, and Dominion Technical Solutions, Inc. (collectively "Dominion" and "plaintiffs"), bring this action concerning alleged breach of a contract against defendant Alstom Power, Inc. ("Alstom").  See Amended Complaint ("Am. Compl.") (Doc. No. 45) at 1.

Before the court are the parties' Cross-Motions for Summary Judgment.  See Motion for Summary Judgment on Phase I ("Pl.'s MSJ") (Doc. No. 129); Motion for Summary Judgment Dismissing Plaintiffs Breach of Contract Claims ("Def.'s First MSJ") (Doc. No. 131); Motion for Summary Judgment Dismissing Plaintiffs Claims as Barred by the Statute of Limitations ("Def.'s Second MSJ") (Doc. No. 132); and Motion for Summary Judgment on the Pleadings and Alternative Motion for Summary Judgment ("Def.'s Third MSJ") (Doc. No. 134).

For the reasons stated below, the Motions for Summary Judgment are granted in part and denied in part, and the Motion for Judgment on the Pleadings is denied.

# I.     STANDARD OF REVIEW

### A.     Summary Judgment

On a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the party is entitled to judgment as a matter of law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Wright v. N.Y. State Dep't of Corr., 831 F.3d 64, 71–72 (2d Cir. 2016).  Once the moving party has met its burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 256, and present "such proof as would allow a reasonable juror to return a verdict in [its] favor," Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000).  "An issue of fact is genuine and material if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Cross Commerce Media, Inc. v. Collective, Inc., 841 F.3d 155, 162 (2d Cir. 2016).

In assessing the record to determine whether there are disputed issues of material fact, the trial court must "resolve all ambiguities and draw all inferences in favor of the party against whom summary judgment is sought."  LaFond v. Gen. Physics Servs. Corp., 50 F.3d 165, 175 (2d Cir. 1995).  "Where it is clear that no rational finder of fact 'could find in favor of the nonmoving party because the evidence to support its case is so slight,' summary judgment should be granted."  F.D.I.C. v. Great Am. Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quoting Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1224 (2d Cir. 1994)).  On the other hand, where "reasonable minds could differ as to the import of the evidence," the question must be left to the

finder of fact. Cortes v. MTA N.Y. City Transit, 802 F.3d 226, 230 (2d Cir. 2015) (quoting R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997)).

When, as here, both parties come before the court on cross-motions for summary judgment, the court is not required to grant judgment as a matter of law for either side. See Ricci v. DeStafano, 530 F.3d 88, 109–10 (2d Cir. 2008). "Rather the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." Id. at 110.

B.     Motion for Judgment on the Pleadings

In deciding a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), courts "employ[ ] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6)." Hayden v. Paterson, 594 F.3d 150, 160 (2d Cir. 2010) (alterations in original). Therefore, courts "accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiffs'] favor." Id. To survive a Motion for Judgment on the Pleadings, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id.

## II.     FACTS[1]

Dominion and Alstom executed a contract titled "Amended and Restated Alliance Agreement" ("Alliance Agreement") on February 1, 2005. Plaintiffs' Local Rule 56(a)(2) Statement of Material Facts in Opposition to Motion for Summary Judgment ("Pl. SOF") ¶ 1. The Alliance Agreement applied to certain services provided by Alstom related to

---

[1] The undisputed facts are taken from Dominion's Local Rule 56(a)(2) Statement of Material Facts in Opposition ("Pls.' SOF") (Doc. No. 138).

the construction, operation, and maintenance of Dominion's power generation facilities. Id. ¶ 2. Dominion and Alstom agreed that the Alliance Agreement would be construed in accordance with Virginia law. Id. ¶ 3. The Alliance Agreement's General Terms and Conditions were Dominion's standard terms and were prepared by Dominion. Id. ¶ 4. Section 5 of the Alliance Agreement contained the parties' rights and obligations as to one another regarding indemnity and defense in the event of certain claims filed against either party. See id. ¶ 5; Pl. SOF, Ex. 1 ("Alliance Agreement") (Doc. No. 133-1) at 39–40. Section 7 of the Alliance Agreement required Alstom to obtain and maintain insurance policies, including "commercial general liability insurance." Pl. SOF ¶ 6. The Alliance Agreement stated that Alstom and Dominion each would, "to the extent permitted by its insurers, require each of their respective insurers to waive all rights of recovery against each other, whether in contract, tort (including negligence and strict liability) or otherwise." Id. ¶ 7.

Prior to the execution of the Alliance Agreement, Dominion and Alstom did not discuss whether the Agreement required the parties to obtain "non-eroding" insurance policies. Id. ¶ 9. Alstom obtained a primary insurance coverage ("the Zurich Policy") and an excess insurance policy ("the Allianz policy") for the 2007–2008 period, both of which contained "eroding" limits of liability. Id. ¶ 13. Dominion was an additional insured party under both policies. Id. ¶ 26. The Alliance Agreement required Alstom to provide Dominion with Certificates of Insurance; Alstom submitted such a certificate in March 2007, confirming that Alstom had obtained the Zurich and Alliance Policies. Id. ¶ 28. The March 2007 Certificate of Insurance included the representation that Alstom had obtained "Commercial General Liability" coverage. Id.

In April 2007, Alstom performed an inspection of a boiler at a Dominion-owned power generating station in Massachusetts. Id. ¶ 33. In November 2007, the boiler failed, resulting in injuries—including fatal injuries—to five workers at the Dominion facility. Id. ¶ 36. In May 2009, the workers and the estates of the workers injured and killed in the accident filed a lawsuit (the "Underlying Litigation") in Massachusetts state court. Id. ¶ 37. The plaintiffs in the Underlying Litigation alleged that the boiler accident was caused by the fault of Dominion, Alstom, and other defendants. Id. ¶ 39.

On July 24, 2009 and September 26, 2009, Alstom made written demands on Dominion that Dominion defend and indemnify Alstom for the claims in the Underlying Litigation. Id. ¶ 40. Dominion denied those demands in a letter dated September 29, 2009. Id. ¶ 41. In the same letter, Dominion noted its position that, "[i]n the event that Plaintiffs' claims against Dominion are determined to be 'arising out of, resulting from, or caused by or to the extent in connection with any of the Materials or Equipment supplied or Services performed by Alstom'" and the Alliance Agreement's exception to the duty to indemnify, that Alstom would be "obliged to indemnify Dominion." See Defendant's Local Rule 56(a)(1) Statement of Material Facts, Ex. F ("Notice of Claims Letter") (Doc. No. 135-6) at 3–4. Dominion further noted that the letter was meant to fulfill the requirement of written notice in accordance with Section 5 of the Alliance Agreement. Id. at 4. Dominion did not expressly use the word "defend" in its Notice of Claims Letter. Pls.' SOF ¶ 42. The Notice of Claims Letter was the only written notice to Alstom, prior to the current action, concerning the claims in this action. Id. ¶ 43.

On December 15, 2009, Dominion and Alstom entered into a tolling agreement ("the Tolling Agreement"), concerning the Underlying Litigation. Id. ¶ 45. The Tolling

Agreement stated that Dominion would have "one year from the date of any settlement or final judgment to bring any action for, or related to, indemnification, contribution, or any other claim or cross claim that may be asserted against (Alstom) with respect to the claims asserted in the [Underlying] Litigation." Id. ¶ 46.

On March 23, 2015, the Massachusetts court in the Underlying Litigation entered an "Order for Entry of Dismissal Nisi," providing that the action had been "REPORTED SETTLED to the Court by counsel." Id. ¶ 57. The Order noted that a judgment of dismissal was to enter on June 22, 2015. Id. On April 7 and 9, a judge in the Underlying Litigation made notations on pleadings filed in the Massachusetts action, stating that the settlements were "fair and reasonable." Id. ¶ 63.

## III.    DISCUSSION

### A.    Alstom's Motions

Alstom has filed three Motions for Summary Judgment, and a Motion for Judgment on the Pleadings. See Doc. Nos. 131, 132, and 134. In its first Motion, Alstom argues that summary judgment in its favor is warranted because (1) no admissible evidence establishes that Alstom had an obligation under the Alliance Agreement to obtain a "non-eroding" insurance policy, see Def.'s First MSJ (Doc. No. 131) at 6; (2) Alstom complied with its contractual duties by procuring the insurance policies at issue in this case, id. at 18; (3) Dominion did not suffer any recoverable damages; and (4) Dominion's alleged damages were not caused by Alstom's breach, or were alternatively barred or limited by provisions of the Alliance Agreement, id. at 30.

In its second Motion for Summary Judgment, Alstom argues that Dominion's breach of contract claims are barred by the applicable statute of limitations. See Def.'s

Second MSJ (Doc. No. 132) at 2–4.  Alstom first argues that Dominion's breach of contract claims accrued no later than 2007, as to Count II, and 2009, as to Count I.  Id. at 5–9.  Second, Alstom argues that, even if the court concludes that the parties' Tolling Agreement is applicable to Dominion's claims, the claims are still time-barred because the one-year tolling of the statute of limitations ran from the earlier of any settlement or final judgment as to an applicable claim, and the parties' Memorandum of Understanding ("MOU") agreements constituted such a settlement.  Id. at 10–17.

In its Third Motion for Summary Judgment, Alstom argues that there is no genuine issue of material fact as to whether section 11-4.1 of the Virginia Code voids any portion of the Alliance Agreement that would impose a requirement on Alstom to pay Dominion for expenses incurred in its defense of the Underlying Litigation.  See Def.'s Third MSJ (Doc. No. 134) at 4–6, 8–11.  In its Motion for Judgment on the Pleadings Alstom argues that, taking Dominion's allegations as true, Dominion's relief is nonetheless barred by the same Virginia statute.  See id. at 6–8.

1.    Statute of Limitations

Alstom makes two arguments as to why Dominion's claims are barred by the applicable statute of limitations.  First, Alstom argues that, because breach of contract claims are subject to Virginia's five-year statute of limitations, Dominion's claims accrued no later than 2007 and 2009, for Count II and Count I, respectively.  See Def.'s Second MSJ (Doc. No. 132) at 5.  Second, Alstom argues that, even if a Tolling Agreement between the parties tolled the statute of limitations, the tolling period expired before Dominion initiated the present action.  See id. at 13.

a. Applicability of the Tolling Agreement

Dominion and Alstom entered into a Tolling Agreement on December 15, 2009. See Defendant's Local Rule 56(a)(1) statement, Ex. G ("Tolling Agreement") (Doc. No. 135-7) at 2. The Tolling Agreement made clear that, "[p]rior to settlement or final judgment in the [Underlying] Litigation, the Parties shall not file or assert any claims or cross claims arising from the claims asserted in the Litigation against any of the other Parties to this Agreement, including claims for indemnification and contribution." Id. at 2 ¶ 1. The Agreement further stated that all parties to the agreement would have "one year from the date of any settlement or final judgment" to bring any "claim or cross claim that may be asserted against any of the Parties to the [Underlying] Litigation with respect to the claims asserted in the litigation." Id. at 3. The Parties also agreed that, "[i]n the event that any applicable statute of limitations is shorter, such limitations period shall be tolled until one year after the date of any settlement or final judgment in the [Underlying] Litigation." Id.

Alstom's first argument, that Dominion's claims are time-barred because the Tolling Agreement did not apply to toll the applicable statute of limitations, see Def.'s Second MSJ at 5, is without merit. The Tolling Agreement stated that the parties would have "one year from the date of any settlement or final judgment to bring any action for, or related to, indemnification, contribution, or any other claim or cross claim that may be asserted against any of the Parties to the Litigation with respect to the claims asserted in the Litigation." Tolling Agreement at 3 ¶ 2. The broad language of the Tolling Agreement unambiguously tolled any applicable statute of limitations on claims between the parties. Alstom offers no argument to contest the applicability of the Tolling

Agreement to Dominion's present claims. Because any statute of limitations was tolled until one year after any settlement or judgment in the underlying litigation, Alstom's Motion for Summary Judgment on the basis that the five-year statute of limitations barred Dominion's claims as of 2012 and 2014, respectively, is denied.

b.      Date of Tolling Period Commencement

Alstom's second argument is that, even assuming that the Tolling Agreement applies to Dominion's claims, the claims are time-barred. Alstom raises two arguments in this regard. Alstom first argues that the one-year tolling of the statute of limitations began running in February 2015, when the parties in the Underlying Litigation entered into Memorandum of Understanding ("MOU") agreements. See Def.'s Second MSJ at 11–12. Alstom argues that, by February 2015, "the plaintiffs in the underlying litigation action had agreed to accept specified amounts to settle their claims." Id. at 11. Alstom further argues that MOUs between the defendants and the plaintiffs "(1) confirmed that the parties had 'reached an agreement to settle any and all claims' asserted by the various plaintiffs in the underlying litigation action, (2) specified the total settlement amount agreed for each plaintiff, and (3) allocated payment of those amounts to Dominion, Alstom and other parties." Id. at 11–12. Alstom points to the parties' actions following the MOUs as support for the existence of a settlement agreement: (1) the parties reported to the court in March 2015, that "the action was settled;" (2) the court entered a dismissal order in March 2015; (3) the defendants agreed to allow the plaintiffs to publish an article confirming settlement; and (4) the parties later executed additional settlement agreements consistent with the amounts agreed upon in February 2015. Id. at 12. Alstom's second argument is that, notwithstanding any involvement of

the plaintiffs in the Underlying Litigation, MOU agreements between the defendants in the Underlying Litigation were sufficient to start the tolling period. See Defendant's Reply to Plaintiff's Opposition to Summary Judgment ("Def.'s Reply in Supp.") (Doc. No. 145) at 9–10. Based on the foregoing, Alstom contends that the tolling period commenced in February 2015. Id.; Def.'s Second MSJ at 13.

Dominion argues that the Massachusetts Workers' Compensation Act, section 15 of chapter 152 of the Massachusetts General Laws, required that any settlement required court approval, "after a hearing in which both the employee and the insurer have had an opportunity to be heard," in order to be enforceable. See Mass. Gen. Laws ch. 152 § 15;[2] Pls.' Mem. in Opp. at 16. Therefore, "the only settlement date recognized under Massachusetts law is the date of the statutorily required court hearings and approvals—here, April 7 and April 9, 2015." Pls.' Mem. in Opp. at 17. Because Dominion filed the current action on April 6, 2016, see Complaint (Doc. No. 1), it argues that its claims are timely.

Alstom responds that (1) section 15 of chapter 152 of the Massachusetts General Laws does not apply to the MOUs signed by the defendants in the Underlying Litigation

---

[2] The statute provides, in pertinent part:

Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person . . . . The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which event the excess shall be retained by or paid to the employee. . . . Except in the case of settlement by agreement by the parties to, and during a trial of, such an action at law, no settlement by agreement shall be made with such other person without the approval of . . . the court in which the action has been commenced after a hearing in which both the employee and the insurer have had an opportunity to be heard.

Mass. Gen. Laws ch. 152 § 15.

alone; (2) the unambiguous language of the Tolling Agreement makes clear that the running of the one-year limitations period did not require court approval of settlement agreements; and (3) construing the Tolling Agreement so as to apply only to approved settlement agreements would impermissibly render other parts of the Agreement meaningless. See Def.'s Second MSJ at 13–15; Def.'s Reply in Supp. at 9–10.

     i.  Relevant Settlements for Purpose of Tolling Agreement

As noted above, Alstom argues that, without regard to any settlements involving the plaintiffs in the Underlying Litigation, the MOUs between the defendants in the Underlying Litigation were sufficient to trigger the beginning of the one-year limitations period in the Tolling Agreement. Def.'s Reply in Supp. at 9–10. Alstom also argues that Massachusetts law did not require court approval of settlements between defendants in the Underlying Litigation. Id. The court rejects as objectively unreasonable Alstom's interpretation of the Tolling Agreement, such that agreements in principle to settle claims, made solely between the defendants in the Underlying Litigation, were sufficient to trigger the start of the one-year claims period.

As the Virginia Supreme Court recently reiterated, "[i]n determining whether a term is ambiguous, a court cannot look at the term in isolation; it must look at the term in the context of the entire contract." James River Ins. Co. v. Doswell Truck Stop, LLC, 827 S.E.2d 374, 376 (Va. 2019). In this case, viewing the Tolling Agreement as a whole, it is clear that the term "any settlement" is a reference to settlement in the Underlying Litigation between the opposing parties, as opposed to related agreements in principle to settle made between the defendants.

First, the preamble to the Tolling Agreement indicates that the motivating factor in the pursuit of the Tolling Agreement was the fact that "Plaintiffs in the [Underlying] Litigation have asserted claims against the Parties to [the Tolling Agreement]." Tolling Agreement at 2. Second, paragraph one of the Tolling Agreement states that, "[p]rior to settlement or final judgment in the Litigation, the Parties shall not file or assert any claims or cross claims arising from the claims asserted in the Litigation." Id. ¶ 1 (emphasis added). The first sentence of paragraph two of the Tolling Agreement states that the parties will have "one year from the date of any settlement or final judgment" to bring claims against one another related to the Underlying Litigation. Id. ¶ 2. While the reference to "any settlement" in the first sentence of paragraph two is not qualified by the words "in the Litigation," the following sentence states that any shorter limitations period "shall be tolled until one year after the date of any settlement . . . in the Litigation." Id.

Alstom provides no basis to read the second reference to "any settlement" as describing a different "settlement" than that referenced in the preceding paragraph and subsequent sentence. Reading the words of the Agreement consistently, the Tolling Agreement's references to "any settlement" means settlement in the Litigation. See Cone v. Cone, 64 Va. Cir. 311 (2004) (reading contract to "allow[ ] the same meanings and the same connotations to be used for wording throughout the entire contract").

While agreements between the defendants in the Underlying Litigation as to the manner or structure of potential settlement with the plaintiffs could be construed as related to the Litigation, they could not reasonably be understood as being "settlements . . . in the Litigation." Moreover, as noted above, the preamble to the Tolling Agreement

indicates that the agreement was precipitated by the fact that "the Plaintiffs in the [Underlying] Litigation . . . asserted claims against the Parties to [the Tolling] Agreement." It would be unreasonable to read the Agreement in a manner that would render sufficient to trigger the one-year claim period agreements that (1) did not include the plaintiffs in the Underlying Litigation, and (2) would not resolve the plaintiffs' claims in the Litigation. The court therefore concludes that the one-year time period in the Tolling Agreement, which period was to be triggered by "any settlement or judgment," could only reasonably be construed as referencing settlements between the plaintiffs and defendants in the Underlying Litigation. The court denies Alstom's Motion for Summary Judgment on the basis that agreements in principle between the defendants in the Underlying Action were sufficient to start the clock on the claims period.

ii. Agreements Between Plaintiffs and Defendants

Alstom also argues that the conduct of the parties in the Underlying Litigation "after executing the February 2015 MOUs demonstrated that an enforceable settlement had been reached." See id. at 12. In particular, Alstom argues that (1) two of the plaintiffs in the Underlying Litigation "signed and executed separate Settlement Agreements" with the defendants in the Underlying Litigation in February 2015; (2) the parties reported the action settled to the court; (3) the court entered an Order for Entry of Dismissal Nisi on March 23, 2015; (4) the defendants in the Underlying Litigation permitted the plaintiffs to publish an article confirming that a settlement had been reached as of March 2015; and (5) the parties later executed additional settlement agreements confirming the same amounts that had been agreed in February 2015. See id.; Def.'s SOF, Exh. I ("Order for Entry of Dismissal Nisi") (Doc. No. 135-9).

Dominion responds that the agreements between the parties were not enforceable until reviewed and approved by a court, in accordance with the Massachusetts Workers' Compensation Act. See Pls.' Mem. in Opp. at 17–18. As the court noted in its Ruling on the Defendant's Motion to Dismiss, the parties have "diametrically opposed positions as to the applicability of section 15 of chapter 152 of the Massachusetts General Laws." Ruling (Doc. No 44) at 9 n.4. The court also noted at that point that, "if the plaintiffs in the [Underlying] Litigation received workers' compensation, it appears that state court approval would be required to create a valid and enforceable settlement of that action." Id. (citations omitted). The undisputed evidence makes clear that all plaintiffs in the underlying action received workers' compensation benefits. See Plaintiffs' Local Rule 56(a)(2) Statement of Material Facts in Opposition ("Pls.' SOF") (Doc. No. 138) ¶ 78; Pls.'s SOF, Exh. 8 ("Assented-To Petitions of Plaintiffs") (Doc. No. 138-8) at 2, 10–11, 18.

Alstom seeks to argue that "'approval' of 'any settlement' was not necessary to start the clock running under the [Tolling Agreement]." Def.'s Reply in Supp. at 10. The court is unpersuaded. The Tolling Agreement required a "settlement" in order for the "clock" to start running on the claims period. Tolling Agreement ¶ 2. An agreement in principle to settle claims is not the same as a settlement. In this case, Massachusetts law expressly required that any settlement agreement be approved by a court, because the "injury for which compensation [was] payable" to the plaintiffs in the Underlying Litigation "was caused under circumstances creating a legal liability in some person other than the insured," and the plaintiffs' insurance companies had paid out workers' compensation benefits in the interim. See Mass. Gen. Laws, ch. 152 § 15.

The Massachusetts Supreme Judicial Court has made clear that a settlement agreement must conform with section 15 "not only [as] to the distribution of its proceeds, but also to procedural requirements . . . ." Bongiorno v. Liberty Mut. Ins. Co., 417 Mass. 396, 404 (1994) (vacating judgment where there was "no indication in the record that the settlement agreement between the plaintiffs and the [defendants] has been approved, as we think it should be"). The statute plays an important role in ensuring that all parties' interests are represented, and that plaintiffs do not wrongfully obtain double recovery. "The major principle favoring the insurer . . . is that an employee should not recover both workmens' compensation benefits and damages at law for the same injury." Taylor v. Trans-Lease Grp., 34 Mass. App. Ct. 404, 408 (1993) (alteration in original) (quoting Eisner v. Hertz Corp., 381 Mass. 127, 131, (1980)).

The Massachusetts court was therefore required to hold a hearing where both the plaintiffs and their insurers had an opportunity to be heard. Only after such a hearing could the court approve the settlements. Until such approval, the settlement agreements were prospective and without force of law. Because the parties did not "settle" the Underlying Litigation until after the court's approval of the agreements, Dominion's suit filed in this court on April 6, 2016 was timely. Alstom's Motion for

Summary Judgment on the basis that Dominion's claims are time-barred (Doc. No. 132) is denied.[3,4]

2.      Virginia Code 11-4.1

Alstom also argues that it is entitled to both judgment on the pleadings and summary judgment because section 11-4.1 of the Virginia Code—which renders void and unenforceable any indemnification clause by which one party agrees to indemnify another party for the latter party's negligent acts—bars Dominion's claims.  See Va. Code § 11-4.1.[5]  Dominion responds that, "[w]hether analyzed under Rule 12(c) or Rule 56, Alstom's argument is entirely without merit."  Pls.' Mem. in Opp. at 19.

---

[3] Alstom also argues that "to read the Tolling Agreement as requiring [court approval] – as opposed to the settlement agreements themselves – as [sic] triggering the clock on the one-year time to file, would render the contract term "any settlement" as mere surplusage," because it would conflate the terms "any settlement" and "final judgment."  See Def.'s Second MSJ at 14–15.  The court rejects Alstom's argument for two reasons.  First, even accepting Alstom's argument as true, court approval of the settlement agreements was required as a matter of law.  It is a well-understood principle of contract law that legislatures may constrain parties' freedom to include specific terms in contracts.  Indeed, Alstom relies on a statutory limitation on private contracts in its affirmative case for summary judgment.  See infra § III(A)(2) (discussing applicability of section 11-4.1 of the Virginia Code). Second, Alstom's argument is incorrect as a matter of interpretation.  A court was required to approve the settlements in order for them to be effective.  Approval of a settlement is a separate action from entering a final judgment in a case. The fact that the court might take two actions simultaneously, however, does not transform two judicial acts—approval and entry of judgment—into one.

[4] Because the court concludes that the Tolling Agreement applied to toll both of Dominion's claims, it does not reach Dominion's alternative argument that Alstom's fraudulent concealment tolled the applicable statute of limitations as to its claim that Alstom breached its contractual duty, under Section 7.A of the Alliance Agreement, to obtain a non-eroding insurance policy.  See Plaintiffs' Combined Opposition to Defendant's Several Motions for Summary Judgment and Alternative Motion for Judgment on the Pleadings (Doc. No. 137) at 12–16.

[5] The statute provides, in pertinent part, that:

[a]ny provision contained in any contract relating to the construction, alteration, repair or maintenance of a building, structure or appurtenance thereto … by which the contractor performing such work purports to indemnify or hold harmless another party to the contract against liability for damage arising out of bodily injury to persons … suffered in the course of performance of the contract, caused by or resulting solely from the negligence of such other party … is against public policy and is void and unenforceable.

The court first addresses the merits of Alstom's Motion for Judgment on the Pleadings. A movant is entitled to judgment on the pleadings "only if it has established 'that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law.'" Juster Assocs. v. City of Rutland, Vt., 901 F.2d 266, 269 (2d Cir. 1990) (alteration in original) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1368, at 690 (1969)). Alstom argues that judgment on the pleadings is appropriate because Dominion did not amend the Complaint to "allege any facts to counter Alstom's showing that the Virginia statute applies to bar Plaintiffs' claims." Def.'s Third MSJ at 7. However, Alstom has failed to demonstrate that it is entitled to judgment as a matter of law.

By its plain terms, section 11-4.1 applies to indemnification agreements, and does not refer to a duty to defend. See Va. Code 11-4.1. The Amended Complaint alleges that (1) "Alstom's obligations under Alliance Agreement section 5.A included an obligation to defend the Dominion Parties," and (2) the obligation to defend was not subject to any limitation of liability. Am. Compl. ¶¶ 21–22. The Amended Complaint alleges breach of a duty to defend, not breach of a duty to indemnify. See id. at ¶ 46 ("Alstom breached its obligations under this contract by failing to pay the costs of the defense of the Dominion Parties in the Underlying Action."). Therefore, accepting as true the facts in the Amended Complaint, Alstom has not demonstrated that, as a matter of law, section 11-4.1 of the Virginia Code would apply to bar Dominion's recovery. Alstom's Motion for Judgment on the Pleadings is denied.

Alstom's Motion for Summary Judgment on the same grounds is similarly meritless. The flaw in Alstom's argument, again, is that it conflates the duty to defend

with the duty to indemnify.  For instance, Alstom argues that "Dominion is seeking

reimbursement from Alstom for the litigation expenses it claims to have incurred in

defending against the bodily injury claims alleged in the underlying litigation."  Def.'s

Third MSJ at 9.  That statement, standing alone, is accurate.  However, Alstom goes on

to argue that Dominion is therefore seeking to enforce a contractual provision that

requires Alstom to "indemnify or hold harmless another party to the contract against

liability for damages arising out of bodily injury to persons . . . suffered in the course of

performance of the contract."  Id. (alterations in original) (quoting Va. Code § 11-4.1).

Alstom's argument would require the court to ignore the fact that Dominion is not

seeking indemnity for damages arising out of the bodily injury alleged in the Underlying

Litigation.  Rather, Dominion seeks reimbursement for the <u>cost of defending the</u>

<u>Underlying Action</u>, arguing that such costs were the result of Alstom's failure to

prospectively fulfill its duty to defend Dominion.  In short, because the plain language of

section 11-4.1 of the Virginia Code does not apply to duties to defend, and Dominion's

claim is solely that Alstom breached a duty to defend, but not to indemnify, Alstom's

Motion for Summary Judgment based on the applicability of section 11-4.1 of the

Virginia Code is denied.

> 3.      Collateral Source Rule

In its first Motion for Summary Judgment (Doc. No. 131), Alstom argues that

Dominion failed to demonstrate that it had suffered any recoverable damages, because

the plaintiffs had been fully reimbursed by their insurer.  <u>See</u> Def.'s First MSJ at 20.

Because no Virginia court had expressly reached the question, this court certified to the

Virginia Supreme Court the question of whether Virginia law applies the collateral

source rule "to a breach of contract action where the plaintiff has been reimbursed by an insurer for the full amount it seeks in damages." <u>See</u> Certified Question Answered in the Affirmative ("Certified Question Response") (Doc. No. 173) at 2.

The Virginia Supreme Court answered the certified question in the affirmative, holding that "the collateral source rule may apply in the breach-of-contract context." <u>Id.</u> at 11. The Virginia Supreme Court noted that whether the collateral source rule applied in a <u>particular</u> case required a case by case analysis, accounting for "[t]he equities, practicalities, and economics of different situations." <u>Id.</u> (alteration in original) (quoting 3 Dan B. Dobbs, Law of Remedies § 12.6(4) at 157 (2d ed. 1993)). The Virginia Supreme Court noted in particular the persuasive force of the argument that a party that paid full value for the benefit of insurance should obtain the benefit of that insurance. <u>See</u> <u>id.</u> at 9. The Court found persuasive the argument that "it makes little sense, in the name of fulfilling the expectations of the contract, to give the breaching party the benefit of a separate contract negotiated before the breach by the non-breaching party with a third party." <u>Id.</u> at 10 (quoting <u>John Munic Enterprises, Inc. v. Laos</u>, 326 P.3d 279, 285 (Ariz. Ct. App. 2014)).

In this case, Dominion paid full value for its excess insurance policy, and it received payment through that policy. Because Alstom and Dominion did not enter into a contract requiring that Dominion procure an excess liability policy, Alstom had no reasonable expectation of any benefit from a contract between Dominion and a third-party insurer. <u>See</u> <u>id.</u> ("[T]he party effecting the insurance paid the full value for it, and there is no equity in the claim of the defendant to the benefit of a contract for which it gave no consideration." (quoting <u>Baltimore & O.R. Co. v. Wightman's Adm'r</u>, 70 Va. 431,

446 (1877), rev'd sub nom. Baltimore & O.R. Co. v. Koontz, 104 U.S. 5 (1881))).

Assuming, arguendo, that Alstom breached its contractual obligations, it would be

inequitable to allow for Alstom, in essence, to receive the benefit of Dominion's premium

payments.  Based on the foregoing, and in light of the Virginia Supreme Court's

affirmative answer to this court's certified question of law, Alstom's Motion for Summary

Judgment, on the basis of the inapplicability of the collateral source rule, is denied.

4.      Alstom's Duty to Obtain Non-Eroding Insurance

Alstom contests that there is no genuine issue of fact as to whether it had a

contractual obligation to obtain a non-eroding insurance policy, and therefore seeks

summary judgment in its favor on Dominion's claim that Alstom breached its duty under

section 7.A of the Alliance Agreement.  See Def.'s First MSJ at 6.  In relevant part,

Section 7.A of the Alliance Agreement required that Alstom obtain and maintain:

> Commercial general liability insurance with bodily injury and property
> damage combined single limits of $1,000,000 per occurrence.  Such
> insurance shall include, but not be limited to, specific coverage for
> contractual liability encompassing the indemnity provisions in Article 5-
> Indemnity, personal injury liability, products/completed operations liability,
> and, where applicable, explosion, collapse, underground hazards coverage
> and watercraft (protection and indemnity) liability.

> [and]

> Umbrella or excess liability insurance with a single limit of $4,000,000 per
> occurrence in excess of the . . .  commercial general liability . . . polic[y].

As Dominion notes, "Alstom's obligations under Section 7.A—and whether or not it

breached Section 7.A—turn entirely on the construction of the phrase 'commercial

general liability insurance.'"  Pls.' Mem. in Opp. at 23.

Dominion argues that commercial general liability insurance "has a standard

meaning in the insurance industry: a policy that provides liability coverage up to the

stated policy limits, plus a full defense to the insured that does not erode policy limits."

Id.  In other words, Dominion argues that trade usage in the insurance industry makes clear that commercial general liability insurance means a non-eroding insurance policy. In response, Alstom argues that Dominion's evidence fails to establish "the necessary evidentiary predicate for Plaintiffs to 'explain' the Alliance Agreement terms with trade usage as alleged."  Def.'s First MSJ at 9.  Second, Alstom argues that such evidence, even if admissible, would contradict the express terms of the Alliance Agreement.[6]

   i.   Trade Usage

   Alstom rests its first argument on the Virginia Supreme Court's decision in Westmoreland-LG&E Partners v. Virginia Elec. & Power Co., 254 Va. 1, 9 (1997).  In Westmoreland, the Virginia Supreme Court reiterated that "trade usage is proper 'to permit the jury to consider the situation of the parties and the circumstances leading up to the making of the contract for the purpose of determining whether the usage in question operated upon the minds of the parties in using the language which was employed in the contract.'"  Id. (quoting Walker v. Gateway Milling Co., 121 Va. 217, 226 (1917)).  However, the Court noted that, before such evidence could be submitted to a jury, the proponent of the evidence must show that "knowledge of the existence of the custom [was] brought home to the [contracting parties], unless the evidence shows that it is so uniform and notorious at the place where the parties to be affected by it reside, as to raise a prima facie presumption that they knew of it."  See id. (quoting Bowles v. Rice, 107 Va. 51, 55 (1907) (first alteration added)).  Alstom argues that

_____

[6] Alstom also argues that Dominion's expert testimony should be excluded, but this court has already concluded that the testimony of Dominion's expert, Jeffrey Stempel, is admissible.  See Ruling (Doc. No. 158).

Dominion has failed to make a showing that knowledge of a special trade meaning of "commercial general liability insurance" was "brought home" to the contracting parties, or that the trade usage was sufficiently uniform and notorious to raise a <u>prima</u> <u>facie</u> presumption that the parties were aware of the trade usage. <u>See</u> Def.'s First MSJ at 9.

Dominion responds that the trade usage regarding the meaning of "commercial general liability insurance" is "precisely the kind of 'uniform and notorious industry custom that gives rise to <u>Westmoreland</u>'s <u>prima</u> <u>facie</u> presumption." Pls.' Mem. in Opp. at 26. Dominion provided evidence indicating that "the standardized [commercial general liability] form, developed by Insurance Services Office, Inc. ('ISO'), has provided for defense costs outside of policy limits since 1955." Pls.' Mem. in Opp. at 26 (citing Dolin, <u>Excess Defense Coverage and Long-Tail Liabilities</u>, 32 Tort & Ins. L.J. 875, 877 n.7 (Spring 1997)). Dominion also provided evidence indicating that Alstom's own insurer, Zurich American Insurance Company, "repeatedly" issued the Zurich Policy using a standardized, non-eroding policy form until 2010, when it used a custom form to provide for an eroding policy. <u>See</u> <u>id.</u>

In addition to the above evidence, Dominion also provided the report of its expert, Jeffrey Stempel. Stempel opined that commercial general liability insurance is widely understood to provide for defense costs above and beyond policy limits. Citing to and reviewing multiple authorities, Stempel concluded that "primary [commercial general liability] insurance is always presumed to provide a defense within limits unless otherwise specified." <u>See</u> Report of Jeffrey W. Stempel ("Stempel Report") (Doc. No. 119-2) at 14 ¶ 31. Stempel further noted that an industry-standard commercial general liability form "provides that the CGL insurer has a duty to defend that does not terminate

until all policy limits are exhausted by payment of judgments or settlements—but not by counsel fees or other litigation expenditures."  Id. at 15 ¶ 35.

The court concludes that Dominion has provided sufficient evidence to raise a prima facie presumption that the parties knew of the alleged trade usage.  While questions remain as to whether the understanding was in fact shared by the parties, that is a question for a jury.  At this stage, however, Dominion's evidence is sufficient to satisfy Westmoreland's prima facie evidence prong.

ii.   Express Terms of the Alliance Agreement

Alstom also argues that, even if commercial general liability insurance has a particular trade usage, that meaning would contradict the express terms of the Alliance Agreement.  See Def.'s First MSJ at 11–16.  Alstom argues (1) that a merger clause precludes trade usage as a means to interpret the Alliance Agreement; (2) that the Alliance Agreement provided that the structure of insurance coverage would be "at Alstom's option;" (3) the Alliance Agreement does not specifically state that Alstom was to procure a "non-eroding" policy; and (4) interpreting the contract through trade usage would amount to an impermissible "modification" of the Alliance Agreement.  See id.

Alstom's arguments are unpersuasive.  First, the merger clause[7] that Alstom references describes the limitations on interpretation of the Purchase Order, not the

---

[7] The clause to which Alstom cites states, in pertinent part:

Unless otherwise mutually agreed to by the parties, in writing, the Purchase Order, and its appendices, embody the entire agreement between Dominion and ALSTOM with respect to the Work and supersedes any prior or contemporaneous agreement or understanding between the parties. . . . No prior course of dealing, usage of trade or course of performance shall be used to supplement or explain any term, conditions or instruction used in the Purchase Order, nor be deemed to effect [sic] any amendment.

Alliance Agreement (Doc. No. 131-1) at 60.

Alliance Agreement. See Pls.' Mem. in Opp. at 27. The merger clause to which Alstom cites states that "[n]o prior course of dealing, usage of trade or course of performance shall be used to supplement or explain any term, conditions or instruction used in the Purchase Order, nor be deemed to effect [sic] any amendment." See id. (alteration and emphasis added). Alstom's argument—that the General Terms and Conditions containing the merger clause in question applied to the Purchase Order—has no bearing on whether the merger clause applied to the Alliance Agreement. See Def.'s Reply in Supp. at 2. It is the terms of the Alliance Agreement, not the Purchase Order, that are implicated by the question on trade usage. Because, by its express terms, the merger clause to which Alstom cites does not restrict interpretation of the Alliance Agreement, Alstom's argument to the contrary is rejected.

Second, while the Alliance Agreement states that the structure of insurance would be at Alstom's option, it does not state that the type of insurance would be at Alstom's option. In relevant part, the Alliance Agreement required that Alstom obtain (1) "Commercial general liability insurance with bodily injury and property damage combined single limits of $1,000,000 per occurrence," and (2) "Umbrella or excess liability insurance with a single limit of $4,000,000 per occurrence in excess of the employer's liability, commercial general liability and automobile liability policies." Alliance Agreement (Doc. No. 133-1) at 42. The Agreement also required that Alstom obtain workers' compensation insurance and automobile liability insurance. See id. The Agreement further provided that:

> The amounts of insurance required above may be satisfied by ALSTOM purchasing primary coverage in the amounts specified or by ALSTOM buying a separate excess umbrella liability policy together with lower limit primary underlying coverage. The structure of the coverage is at ALSTOM's

option, so long as the total amount of insurance meets Dominion's requirements.

See Alliance Agreement at 42. Reading the Agreement as a whole, the court concludes, as a matter of law, that Alstom's argument—that the Agreement's reference to the "structure of the coverage" being at Alstom's option refers to the type of insurance purchased—is unreasonable. The Agreement is clear that Alstom may meet the amount requirements—that is, $5 million—either by purchasing only primary insurance coverage, or by combining the primary insurance coverage with excess liability insurance. Nowhere does the Agreement state that Alstom is free to forego the purchase of primary insurance altogether.

Third, the court is unpersuaded by Alstom's argument that "[e]vidence of alleged trade usage that would have added additional insurance requirements to the contract would be contrary to the express terms of the contract that specified in detail Alstom's insurance obligations." See Def.'s First MSJ at 14. Alstom argues that the Alliance Agreement does not expressly require Alstom to obtain a non-eroding insurance policy. While Alstom is correct that, generally speaking, "the omission of a particular term from a contract is evidence that the parties intended to exclude that term," see id. (quoting Pocahontas Mining. Ltd. Liability Co. v. CNX Gas Co., 666 S.E.2d 527, 531 (Va. 2008)), the entire dispute revolves around whether, by including the words "commercial general liability insurance," the parties were including a requirement that Alstom obtain a non-eroding policy. If commercial general liability insurance effectively means a non-eroding policy, then there is no "omission" of a contract term. Alstom's argument essentially assumes its interpretation is correct. As noted above, Dominion has provided sufficient

evidence that its interpretation is correct, so as to warrant the question being put to a jury.  Alstom's argument is therefore rejected.

Fourth, Alstom's argument regarding the Alliance Agreement's limitations on contract modification fails.  Alstom argues that "allowing Dominion to use evidence of alleged trade usage would be a modification of the parties' contract terms contrary to the express language of the contract," and that such a modification would violate provisions in the Alliance Agreement barring modification absent written consent of specific persons.  See Def.'s First MSJ at 15.  Alstom argues that Dominion is "attempting to insert terms and conditions into the parties' contract which would impose on Alstom an obligation that is not set forth or provided in the contract."  Id.  As with its prior argument, Alstom assumes the conclusion it wishes the court to reach.  Because a genuine issue of fact remains as to whether Alstom was required to procure a non-eroding policy, and because evidence of trade usage is admissible to explain even unambiguous terms, Alstom's argument regarding impermissible contract modification is denied.

5.      Causation, Damage Exclusions, and Limitations of Liability

Alstom argues that the "evidence shows that Plaintiffs' only 'damages' were caused by Plaintiffs' insurers or by Plaintiffs themselves."  Def.'s First MSJ at 28.  First, Alstom argues that, because Dominion has already been fully reimbursed by its insurer, AEGIS, and AEGIS is not seeking reimbursement, "the only cost or expense that Dominion would incur is a possible increase in its future insurance premiums."  Id. at 29.  Second, Alstom argues that Dominion settled for a payment of $2.52 million from Alstom's insurer, Allianz Global Risks US Insurance Company ("Allianz"), rather than

pursuing claims for additional amounts from Allianz.  Id.  Alstom argues that it is not responsible for any losses resulting from increased insurance premiums or Dominion's release of claims against Allianz, because any such losses were not caused by a breach on Alstom's part.  Id.  Dominion responds that it is seeking to recover its defense costs in the Underlying Litigation, and that it incurred its defense costs "precisely because Alstom failed to fulfill its obligations under the Alliance Agreement to either defend Dominion or to purchase non-eroding insurance."  Pls.' Mem. in Opp. at 36.

As the party seeking summary judgment, Alstom bears the burden of establishing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  Here, Alstom has failed to demonstrate it is entitled to judgment as a matter of law.  Alstom argues that, "Plaintiffs' failure to pursue claims against the Allianz insurers bars Plaintiffs' claims because coverage was available under the Allianz policy but for this compromise for a lesser amount."  See Def.'s Reply in Supp. at 6.  However, Alstom failed to establish that Virginia Law precludes recovery for a breach of contract after a compromise settlement with an insurer.  Indeed, it cites to no authority to support such a conclusion.  Moreover, it appears that Alstom's arguments in this regard are little more than a rephrasing of its argument that the collateral source rule does not apply to Virginia breach of contract actions—an argument barred by the Virginia Supreme Court's affirmative response to this court's certified question of law.  See Certified Question Response (Doc. No. 173) at 11 (concluding that "the collateral source rule may apply in the breach-of-contract context").

Moreover, Alstom argues that "[n]either Dominion's future increases in insurance premiums nor Dominion's release of claims for recovery under the Allianz policy can be characterized as damages caused by Alstom's alleged contract breach." Def.'s First MSJ at 30. Therefore, Alstom argues that Dominion has failed to establish damage "caused by the breach of obligation," as required to sustain a breach of contract action under Virginia law. See id. This argument again misses the point of Dominion's allegations: that Alstom's breach of its duties to obtain non-eroding insurance, and its duty to defend Dominion, resulted in Dominion paying for costs of litigation that it should not have had to pay. At the very least, an issue of fact remains as to whether Alstom caused Dominion's damages. Therefore, summary judgment based on Alstom's argument that it did not cause Dominion's damages must be denied.

Finally, Alstom argues that Dominion seeks consequential damages, which are barred by the Alliance Agreement. There is no question that the Alliance Agreement barred recovery of "consequential loss." See Def.'s Third MSJ at 31. However, Alstom and Dominion dispute whether the damages Dominion seeks are direct or consequential damages. The Virginia Supreme Court has explained the difference between "direct" and "consequential" damages as follows:

> Direct damages are those that flow "naturally" from a breach of contract; i.e., those that, in the ordinary course of human experience, can be expected to result from the breach, and are compensable. Consequential damages arise from the intervention of "special circumstances" not ordinarily predictable and are compensable only if it is determined that the special circumstances were within the contemplation of the parties to the contract.

R.K. Chevrolet, Inc. v. Hayden, 253 Va. 50, 56, (1997).  Whether damages are direct or consequential is a question of law.  NAJLA Assocs., Inc. v. William L. Griffith & Co. of Virginia, 253 Va. 83, 87 (1997).

Alstom argues that "there is no evidence the parties contemplated the circumstances presented here" at the time the contract was executed.  Def.'s Third MSJ at 31.  Specifically, Alstom argues that there is no evidence that the parties expected that Dominion would claim damages for a breach of contract after having recovered the $5 million from a general liability policy, settling with Allianz, and obtaining a payment from its own insurer.  See id.  Dominion responds that, because the action is one for breach of a duty to defend and breach of a duty to obtain non-eroding insurance, the costs of defense in the Underlying Action "are clearly direct damages."  Pls.' Mem. in Opp. at 37.

Alstom's argument confuses the determinative issue as to whether damages are direct or consequential.  The question is not whether the parties contemplated every potential sequence of events leading to the alleged damages, but whether the damages sought would ordinarily be expected to result from the breach alleged.  Costs of defense are precisely the type of damages one would expect to flow from a breach of a duty to defend.  Similarly, if a party is required to purchase non-eroding insurance, but instead purchases insurance with eroding policy limits, such that there may be insufficient coverage to pay for outstanding liability and defense costs, suit for recovery of such costs "can be expected to result from the breach."  R.K. Chevrolet, Inc., 253 Va. at 56. The court, therefore, concludes that Dominion seeks direct damages.  Because the court concludes, as a matter of law, that the damages Dominion seeks are direct, and

not consequential, Alstom's Motion for Summary Judgment, on the basis that Dominion seeks unrecoverable damages, is denied.

B.    Dominion's Motion for Summary Judgment

Dominion seeks summary judgment in its favor as to: (1) its claim that Alstom breached its duty to defend pursuant to Section 5.A of the Alliance Agreement; (2) its claim that Alstom breached its duty to obtain a non-eroding insurance policy, pursuant to Section 7.A of the Alliance Agreement; and (3) as to Alstom's three counterclaims. See Memorandum of Law in Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem. in Supp.") (Doc. No. 130) at 1–2.

1.    Alstom's Duty to Defend

Dominion's first argument is that summary judgment in its favor is warranted because the undisputed facts establish that Alstom breached its duty to defend Dominion in the Underlying Litigation.  See id. at 8–10.  Dominion argues that Section 5.A imposes two separate duties on Alstom: a duty to indemnify and a duty to defend. See id. at 9.  Dominion argues that Alstom was "clearly required to defend Dominion" in the Underlying Litigation because (1) the claims were for injury or death arising out of or related to Alstom's services to Dominion; (2) the claims were brought against Alstom and Dominion, among others; (3) Alstom had notice of the claims as a party; (4) Dominion provided further written notice of the claims to Alstom; and (5) Alstom did not pay for Dominion's defense in the Underlying Litigation.  See id. at 10.

Alstom argues that summary judgment should be denied.  Alstom raises a number of arguments to support its position, two of which are addressed by this court's earlier discussion.  Alstom argues that (1) section 11-4.1 of the Virginia Code bars

Alstom's claims, and (2) that the collateral source rule does not apply to Dominion's claims. As noted above, the court concludes that section 11-4.1 of the Virginia Code does not apply to Dominion's breach of contract claim based on a breach of the duty to defend. See supra § III(A)(2). Moreover, based on the Virginia Supreme Court's affirmative response to its certified question of law, the court concludes that the collateral source rule applies to Dominion's claims, and insurance payouts made to Dominion do not preclude its potential recovery of damages for breach of contract from Alstom. See supra § III(A)(3).

Alstom's remaining arguments against summary judgment as to Dominion's claim that Alstom breached its duty to defend are as follows. First, Alstom argues that Dominion's claim is in fact one for indemnity, and such a claim is subject to a determination of relative fault. See Def.'s Mem. in Opp. at 8. Alstom also argues that Dominion's reading of the indemnity provisions would be nonsensical because it would simply require both parties to reimburse the other for defense costs. See id. at 8–9. Second, Alstom argues that, as a matter of law, the duty to defend in a non-insurance context is no broader than the duty to indemnify. See id. at 10. Third, Alstom argues that Dominion never exercised its option under the Alliance Agreement to request a defense in the Underlying Litigation. Id. at 16.

As an initial matter, the court rejects Alstom's contention that Dominion's claim under Section 5.A of the Alliance Agreement is for indemnification. Rather, the court concludes that Dominion is seeking damages for an alleged breach of Alstom's duty to defend. The duty to indemnify and the duty to defend are separate legal responsibilities. See, e.g., Perdue Farms, Inc. v. Travelers Cas. And Sur. Co. Of Am.,

448 F.3d 252, 257 (4th Cir. 2006) ("This case involves two separate concepts in the law of insurance: the duty to defend and the duty to indemnify."); <u>Rockingham Mutual Insurance Co. v. Davis</u>, No. CL01-12576, 2002 WL 33941848 (Va.Cir.Ct. Apr. 26, 2002) (differentiating, in case involving insurance contract, between "insurer's duty to indemnify, the insurer's duty to defend, and the insured's duty to pay premiums.").

As Dominion argues, a failure to prospectively defend can only be rectified through a retrospective claim for damages. <u>See</u> Plaintiffs' Reply in Support of Motion for Judgment on Phase I ("Pls.' Reply in Supp.") (Doc. No. 144) at 2 (arguing court must reject Alstom's argument that Dominion is seeking indemnification "simply because it is looking to recover past defense costs" because "[a]ll such claims involve damages in the form of 'reimbursement' of unpaid past defense costs"). While the amount sought or recovered by a party in an indemnification claim and a breach of contract claim may be identical, the legal causes of action are distinct.

The court also rejects Alstom's argument that accepting Dominion's reading of the Alliance Agreement would lead to "absurd results" because such a reading would require "each party to pay the other's defense costs in the Underlying Litigation without regard to which party caused the accident or the expenses." Def.'s Mem. in Opp. at 9. Indeed, a cursory review of the relevant Alliance Agreement provisions indicate that, contrary to Alstom's arguments, the contracting parties' indemnity rights are not reciprocal. <u>Contra</u> <u>id.</u> at 8. Section 5.A states that:

> ALSTOM agrees to indemnify, save harmless and, at Dominion's sole option, defend Dominion . . . against all claims . . . arising out of, resulting from, or caused by or to the extent in connection with any of the . . . Services performed by ALSTOM for (i) third party claims for personal injury or death to persons . . . .

Alliance Agreement at 39.  By contrast, Section 5.B states that:

> Dominion agrees to indemnify, save harmless and, at ALSTOM's sole option, defend ALSTOM . . . from and against all claims . . . to the extent arising out of, resulting from, or caused by or to the extent in connection with any breach of this Purchase Order by Dominion for (i) third party claims for personal injury or death to persons . . . .

Id. at 40.  As the provisions make clear, Section 5.A, which includes Alstom's duty to defend, is implicated by any claims arising from any Services performed by Alstom.  By contrast, Section 5.B, which includes Dominion's duty to defend, is implicated by claims related to Dominion's breach of the Purchase Order.  Underlying claims could relate to Alstom's Services under the Purchase Agreement without relating to a breach of the Purchase Order by Dominion—or vice versa.  Because the Alliance Agreement does not require that Alstom and Dominion reimburse each other in all situations for defense costs, Dominion's proposed reading of the agreement is not "absurd," and Alstom's argument to the contrary is rejected.

Dominion argues, in support of its Motion for Summary Judgment, that Alstom's defense obligation "is not dependent upon a determination of the relative fault of Dominion and Alstom."  Pls.' Mem. in Supp. at 10.  Dominion argues that the Alliance Agreement creates a separate duty to defend and duty to indemnify, and while the duty to indemnify is specifically limited to the extent that any claims or losses are not caused by Dominion's negligence, that the Alliance Agreement does not similarly limit the duty to defend.  Id. at 10–11.  Dominion argues that this difference "mirrors the well-established differences" between the two duties, including that the duty to defend is broader than the duty to indemnify.  Id. at 11.  Dominion argues that, "[i]f Alstom was

only obligated to provide a defense after an adjudication of relative fault . . . then it would never be required to provide Dominion with a prospective defense." Id. at 11–12.

Alstom responds that its duty to defend cannot be determined absent a finding of relative fault for the tortious conduct that spawned the Underlying Litigation. See Def.'s Mem. in Opp. at 9. Alstom argues that, unlike in the insurance context, the duty to defend is not broader than the duty to indemnify. Id. at 10. In support of this argument, Alstom relies heavily on Zamias Servs., Inc. v. Pinkerton's Inc., 2006 WL 2021976 (Va. Cir. Ct. 2006), an unpublished decision of a Virginia trial court. The court does not find Zamias persuasive in regard to the issue before it. First, the Zamias opinion indicates that the contract provisions at issue in that case differed from those in the Alliance Agreement. The contract in Zamias provided that the defendant would "indemnify, defend . . . and hold harmless [the plaintiff] from and against any and all claims, liabilities, demands, actions, suits, damages, losses, injuries, costs and expenses . . . arising from or related to the negligence, gross negligence or willful misconduct" of the defendant. Zamias, 2006 WL 2021976 at *1 (second alteration added). The duty to defend was therefore expressly limited by contract. By contrast, the Alliance Agreement's limitation on indemnification does not similarly reference the duty to defend. See Alliance Agreement at 11 (stating that "ALSTOM shall not be required to indemnify Dominion to the extent such claims . . . or expenses are caused by Dominion . . . .").

Moreover, while the Zamias court disagreed with an interpretation of the contract that would "impose[ ] a duty to defend absent a determination of negligence" because "[s]uch view would mean that the duty to indemnify is broader than the indemnity itself,"

<u>see</u> <u>Zamias</u>, 2006 WL 2021976 at *2, this court was unable to find any Virginia

Appellate or Supreme Court decision that addressed the same question, outside the

context of an insurance policy. <u>Zamias</u>' persuasive force is further limited by the fact

that the court assumed, but did not provide any analysis as to why, the duty to defend

should not apply at the outset of litigation, as opposed to being determined after a

finding of liability. Indeed, this court fails to see why a contract would differentiate

between "the duty to indemnify" and "the duty to defend," if both duties were to be

determined identically.

The <u>Zamias</u> court's conclusion as to the duty to defend was also one of three

alternative bases for its decision. The court also found support for its conclusion in the

fact that "the parties' contract impose[d] no duty" on the defendant to defend the plaintiff

for its own negligence. <u>Id.</u> By comparison, and as noted above, the limiting provision in

the Alliance Agreement applies to indemnification but does not similarly reference the

duty to defend. By separately listing the duty to indemnify and the duty to defend, the

parties made clear their awareness that the duties were distinct. The parties

demonstrated their ability to draft a limiting provision requiring a finding of and

apportionment of liability prior to the determination of a contractual duty. However, the

parties only drafted the limiting provision so as to extend to the duty to indemnify and

did not reference the duty to defend. The court declines to read in a relative fault

determination requirement as to the duty to defend, where the contract does not

expressly do so. Based on the foregoing, the court concludes that, if faced with the

same question, the Virginia Supreme Court would conclude that the duty to defend, at

least in the context of a complex contract involving sophisticated commercial parties, may extend beyond the duty to indemnify.

Dominion further argues that it complied with its notice obligations under Section 5.A of the Alliance Agreement. See Pls.' Mem. in Supp. at 15. Dominion argues that Alstom's obligation was triggered by Dominion's September 29, 2009 "Notice of Claims Letter," and that "formal tender" of its defense was not required, because (1) the plain terms of the Alliance Agreement only required that Dominion give Alstom notice of relevant claims, and (2) Virginia law only requires "the insured to provide to the insurer sufficient notice of the claim in order to trigger the duty to defend." Id. Alstom argues in opposition that the Alliance Agreement expressly specified that Alstom's duty to defend would be "at Dominion's sole option," but that Dominion never exercised that option. Def.'s Mem. in Opp. at 16.

The court concludes that factual issues remain, which preclude a grant of summary judgment as to Dominion's claim that Alstom breached its duty to defend. First, Section 5.A states that Alstom shall defend Dominion "at Dominion's sole option." Alliance Agreement at 39. As Alstom argues, Dominion's Notice of Claims Letter does not make any specific mention of a duty to defend, except for the direct quotation of Section 5.A of the Alliance Agreement. See Plaintiffs' Exhibit 7 ("Notice of Claims Letter") (Doc. No. 133-7) at 3. Indeed, the single sentence indicating that the Letter is meant to serve as "notice in accordance with Section 5" immediately follows an analysis of Alstom's duty to indemnify and is followed in turn by a statement that "it seems most appropriate to Dominion for it to simply reserve the right to seek indemnification from Alstom in the future, should the circumstances warrant it." Id. at 3–4. The Letter ends

with a statement of Dominion's hope that Alstom "will agree that this is the best course of action for both Alstom and Dominion at this stage of be litigation, and that we can continue to work cooperatively in defending against the Plaintiffs' claims against both Alston and Dominion in the above-referenced lawsuit." Id. at 4.

Regardless of whether "formal tender" or simple notice of claims is sufficient notice under Section 5.A, see Pls.' Mem. in Supp. at 15–16, there remains at the very least a question of fact for a jury as to whether Dominion waived its option to request a defense by informing Alstom of its view that it was "simply reserv[ing] the right to seek indemnification from Alstom in the future, should the circumstances warrant it." Id. at 3– 4. This conclusion is further bolstered by Dominion's statement, in its Notice of Claims Letter, that it looked forward to "working cooperatively [with Alstom] in defending" against the claims in the Underlying Action. A reasonable jury could infer that Dominion sought to pursue a joint defense, rather than tender its defense to Alstom. A reasonable jury could also find that Dominion had tendered its defense to Alstom through its Notice of Claims Letter, but it is the jury's job to do so. Because the court concludes that genuine issues of material fact remain as to Dominion's claim pursuant to Section 5.A, its Motion for Summary Judgment as to whether Alstom breached its duty to defend is denied.

### 2. Alstom's Duty to Obtain Non-Eroding Insurance

The court also concludes that genuine issues of material fact preclude summary judgment as to Dominion's claim that Alstom breached its alleged duty to obtain non-eroding insurance. Dominion and Alstom put forward opposing arguments as to whether a trade usage exists such that "commercial general liability insurance" is

generally understood to mean a non-eroding insurance policy.  The parties' expert witnesses similarly submitted divergent reports and conclusions as to the same question.  <u>Compare</u> Stempel Report at 14 ¶ 31 (concluding, based on survey of sources and historical analysis, that "unless one is told to the contrary, the understanding surrounding CGL insurance is that defense expenditures do not reduce policy limits"), <u>with</u> Expert Report of Tommy R. Michaels ("Michaels Report") (Doc. No. 118-1) at 3 (opining that, in his opinion, "[n]on-eroding policy limits for CGL policies are not 'standard,' especially for the kinds of insurance policies involved in this litigation").

A determination as to whether such a trade usage indeed existed, and whether it was sufficiently well known that the parties could be assumed to know of it, would require this court to engage in a weighing of the evidence and credibility of witnesses.  Those tasks are appropriately left to a factfinder, rendering summary judgment inappropriate.  <u>See, e.g.</u>, <u>Piland Corp. v. League Const. Co.</u>, 238 Va. 187, 189, 380 S.E.2d 652, 653 (1989) ("Upon considering a motion for summary judgment, the court must rule, as a matter of law, on the sufficiency of the evidence; it does not weigh the evidence as a finder of fact.").  Because a reasonable jury could find that trade usage had not established that commercial general liability insurance must be non-eroding, Dominion's Motion for Summary Judgment, as to its claim that Alstom breached a duty to obtain non-eroding insurance, is denied.

3.    Alstom's Counterclaims

Finally, Dominion seeks summary judgment as to Alstom's counterclaims.  Alstom raises three counterclaims against Dominion.  First, Alstom alleges that Dominion breached its duty to indemnify Alstom.  <u>See</u> Answer (Doc. No. 48) at 27–28

("Counterclaim 1"). Second, Alstom argues that it is entitled to indemnity at law. Id. at 28–29 ("Counterclaim 2"). Third, Alstom alleges that Dominion breached a duty to waive its right to recovery under section 7.A. Id. at 29–30 ("Counterclaim 3"). The court addresses each claim in turn.

First, Alstom alleges that Dominion breached the terms of the Purchase Order, which triggered its duty to indemnify Alstom. See Def.'s Mem. in Opp. at 30. Alstom's claim is centered on its argument that the Alliance Agreement's Safety Appendix "imposed obligations on both Dominion and Alstom," and that Dominion breached various obligations under the Safety Appendix. See id. at 31–32. Dominion argues that it is entitled to summary judgment on Alstom's counterclaim because the Safety Appendix "clearly applies to Alstom, not Dominion," and therefore Dominion did not breach the Purchase Order. See Pls.' Mem. in Supp. at 24 ("Because the Appendix does not impose any duties or obligations on Dominion, let alone a specific duty to inspect or maintain, it cannot form a basis for Alstom's claimed breach.").

A brief review of the Safety Appendix makes clear that it imposes duties only on Alstom. The Safety Appendix repeatedly states that "ALSTOM shall . . ." adhere to its requirements, while providing that Dominion would have options to review Alstom's policies and procedures. Compare Alliance Agreement at 61 (stating, inter alia, that Alstom shall "be responsible for . . . all subcontractors" and ensure its employees are familiar with Dominion's emergency procedures), with id. at 61, 62 (stating that Dominion "shall have access to" Alstom's safety and health programs and would have the option to waive orientation of Alstom employees who had been oriented in the last year). Moreover, the Alliance Agreement also states that, "[e]xcept as otherwise

expressly provided in the Purchase Order, ALSTOM shall perform all work on Dominion owned property and facilities in accordance with . . . Appendix A, Safety . . . ." Id. at 59. The terms of the Alliance Agreement unambiguously required that Alstom adhere to the Safety Appendix. While the Appendix affords Dominion certain rights and options, it does not similarly impose any duties on Dominion. Because it does not impose contractual duties on Dominion, the Safety Appendix cannot, as a matter of law, be the source of a breach of contract action against Dominion. Dominion's Motion for Summary Judgment as to Counterclaim 1—Alstom's claim for breach of the duty to indemnify—is granted.

Second, Alstom alleges that it is entitled to indemnity as a matter of law. Under Massachusetts law,[8] one party may seek indemnification from another where the would-be indemnitee is required to defend an action concerning the negligent acts of another, and the would-be indemnitee "does not join in the negligent act" and "is free of fault." See Def.'s Mem. in Opp. at 37. However, as the parties agree, indemnity at law is limited to circumstances where "the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another." See Pls.' Reply in Supp. at 10 (quoting Def.'s Mem. in Opp. at 38). The parties dispute whether the right to indemnity at law depends on the claims in the Underlying Litigation, or the ultimate determination of fault by a factfinder. Compare Def.'s Mem. in Opp. at 38 ("[I]t is the fact finder's

---

[8] Massachusetts law applies to the determination of Alstom's claim for indemnity at law because such a claim sounds in tort. Connecticut applies the most significant relationship test to determine what law applies to a tort claim. See W. Dermatology Consultants, P.C. v. VitalWorks, Inc., 322 Conn. 541, 558 (2016). Because the allegedly tortious acts occurred in Massachusetts, Alstom performed services pursuant to the Purchase Order in Massachusetts, and the Underlying Litigation took place in Massachusetts, the court applies Massachusetts law.

ultimate allocation of fault for the accident that will [determine] if Alstom was 'free from fault' or 'did not join in the negligent act.'"), with Pls.' Reply in Supp. at 10 (arguing that "[e]ven if a fact-finder determined that Dominion was solely at fault for the Underlying Litigation, such a decision would not translate into derivative or vicarious liability, because no such relationship exists between Dominion and Alstom").

Here, the undisputed evidence requires that Dominion's Motion for Summary Judgment be granted. Alstom's argument is that "it will be exonerated from fault for the accident and that its alleged liability was derived solely and exclusively from the actions of Dominion." Def.'s Mem. in Opp. at 39. However, as Alstom concedes, derivative liability depends on some form of special relationship between the parties. Id. at 38 ("Tort-based indemnity is also limited to circumstances where 'the would-be indemnitee is held derivatively or vicariously liable for the wrongful act of another.'" (quoting Decker v. Black and Decker Mfg. Co., 389 Mass. 35, 40 (1983)). Alstom points to no admissible evidence of such a relationship. Alstom provided no evidence of an agency or employer-employee relationship in this case. Indeed, the Alliance Agreement explicitly states that "[n]othing contained in this Alliance Agreement shall be construed as creating a partnership, joint venture, agency, or fiduciary relationship between the Parties." Alliance Agreement at 7. Therefore, even if a jury was to find Alstom was not at fault for the Underlying Litigation, Alstom's claim for indemnity at law would nevertheless fail because Alstom has failed to come forward with any admissible evidence sufficient to raise an issue of fact as to the existence of a special relationship between the parties. Dominion's Motion for Summary Judgment as to Counterclaim 2— Alstom's claim for indemnity at law—is granted.

Dominion also seeks summary judgment in its favor as to Counterclaim 3— a claim that Dominion breached section 7.A of the Alliance Agreement. Alstom alleges that Dominion breached Section 7.A of the Alliance Agreement by "failing to require its insurers to waive all rights of recovery against Alstom and by pursuing claims paid by their insurers." <u>See</u> Defendant's Answer, Defenses, Counterclaim[,] and Jury Demand ("Answer") (Doc. No. 48) ¶ 108. Alstom argues that "has been damaged by this Dominion contract breach in having to incur expenses in defending this litigation." <u>See</u> Def.'s Mem. in Opp. at 36. Dominion argues that Alstom's argument "has no relevance to this lawsuit," noting that Dominion "is not bringing this lawsuit on behalf of AEGIS or any other insurer." Pls.' Mem. in Supp. at 27.

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." <u>Navar, Inc. v. Fed. Bus. Council</u>, 291 Va. 338, 344 (2016) (alteration added) (quoting <u>Ulloa v. QSP, Inc.</u>, 271 Va. 72, 79 (2006)). "[A] plaintiff must show a causal connection between the defendant's wrongful conduct and the damages asserted." <u>Id.</u> Dominion argues that the waiver provision has no bearing on the current litigation, because it is seeking recovery in its own right, and not on behalf of any insurance company. Indeed, Dominion has represented (and Alstom does not dispute) that Dominion is not required to reimburse its insurers for any potential award in the current litigation. <u>See</u> Def.'s Mem. in Opp. at 29 (noting that Dominion's "insurer (AEGIS) has fully compensated the Plaintiffs for their alleged damages [and that] the

insurer has acknowledged that Plaintiffs are not required to reimburse the insurer for the amounts paid.").

While Alstom has alleged that Dominion's breach of the waiver provision caused damages in the form of the cost of this litigation, see Def.'s Mem. in Opp. at 36, Alstom has provided no admissible evidence upon which a reasonable jury could find a causal connection between Dominion's alleged breach and Alstom's alleged damages. Indeed, given that it is <u>Dominion</u>, not any insurers, pursuing the present claims against Alstom, it is unclear how the current litigation could be causally connected to any breach of Dominion's duty to require that its insurers waive claims against Alstom. Finally, Alstom has provided no argument explaining why, even if Dominion <u>had</u> required all of its insurers to waive claims against Alstom (such that there was no breach), such waivers by the insurers would preclude Dominion from pursuing its current claims.

In short, Alstom failed to present "such proof as would allow a reasonable juror to return a verdict in [its] favor" as to whether there was a causal connection between Dominion's alleged breach and Alstom's alleged damages. <u>See</u> <u>Graham</u>, 230 F.3d at 38. Absent a causal connection between the alleged breach and damages, Alstom's Counterclaim 3, alleging a breach of contract, fails as a matter of law. Dominion's Motion for Summary Judgment as to Counterclaim 3 is granted.

## IV. CONCLUSION

For the reasons stated above, Alstom's Motions for Summary Judgment and Motion for Judgment on the Pleadings (Doc. Nos. 131, 132, 134) are **DENIED**, and Dominion's Motion for Summary Judgment (Doc. No. 129) is **GRANTED IN PART** and **DENIED IN PART**. Dominion's Motion for Summary Judgment is granted as to Alstom's

Counterclaim 1, Counterclaim 2, and Counterclaim 3.  In all other respects, Dominion's Motion for Summary Judgment is denied.

**SO ORDERED.**

Dated at New Haven, Connecticut this 12th day of July 2019.

/s/ Janet C. Hall_____
Janet C. Hall
United States District Judge